The **MIDWESTERN INDEMNITY COMPANY, as subrogee of Action Steel, Inc., and Louise Litwack, Appellants–Plaintiffs,**

v.

**SYSTEMS BUILDERS, INC., Varco–Pruden Buildings and A/E Technologies, Inc., Appellees–Defendants.**

No. 49A02–0304–CV–287.

Court of Appeals of Indiana.

Jan. 14, 2004.

Transfer Denied May 7, 2004.

---

Charles T. Jennings, Thomas R. Haley III, Jennings Taylor Wheeler & Bouwkamp, Carmel, IN, Attorneys for Appellants.

James L. Petersen, Ice Miller, Indianapolis, IN, Philip L. Fortune, Smith Currie & Hancock, Atlanta, GA, Attorneys for Appellees.

## OPINION

SHARPNACK, Judge.

This appeal arises out of a contract for the construction of an addition to an industrial building and the collapse of that addition due to an accumulation of snow on its roof. The plaintiff and appellant is Midwestern Indemnity Company ("Midwestern") which brought suit as subrogee of Louise Litwick and Action Steel, Inc. ("Action Steel") to recover the amount it paid to its insureds for damage to their property incurred by the collapse of the addition. The defendant and appellee is Varco–Pruden Building ("Varco–Pruden"), a subcontractor of Systems Builders, Inc. ("Systems Builders"), the general contractor for the construction of the building addition. Varco–Pruden designed and erected the addition. In the trial court, Varco–Pruden was granted two summary judgments that, together, barred all claims of Midwestern against Varco–Pruden.

The issues presented in the appeal are:

I. Whether the trial court correctly determined that the waiver of insurance and subrogation provisions of the construction contract barred recovery of all claims other than for negligence;

II. Whether the waiver of insurance and subrogation provisions of the construction contract bar recovery for negligence;

III. Whether the waiver of insurance and subrogation provisions of the construction contract bar recovery for amounts paid for damages to the contents of the building; and

IV. Whether there is evidence to create a genuine issue of fact as to whether the cause of the collapse of the building addition was an act or omission of Varco–Pruden.

We affirm in part, reverse in part, and remand.

The relevant facts designated by the parties follow. Litwack, in her capacity as the owner of Action Steel, entered into a contract with Systems Builders for the construction of an addition to a commercial building. Systems Builders was the general contractor and agreed to erect a building designed and manufactured by Varco–Pruden. The construction contract was an A201 standard form contract issued by the American Institute of Architects ("AIA"). Section 11.3 of the construction contract, which dealt with property insurance, provided, in relevant part, that:

> 11.3.1 Unless otherwise provided, the Owner shall purchase and maintain, in a company or companies lawfully authorized to do business in the jurisdiction in which the Project is located, property insurance.... This insurance shall include interests of the Owner, the Contractor, Subcontractors and Sub-subcontractors in the Work.

> \* \* \* \* \*

> 11.3.5 If during the Project construction period the Owner insures properties, real or personal or both, adjoining or adjacent to the site by property insurance under policies separate from those insuring the Project, or if after final payment property insurance is to be provided on the completed Project through a policy or policies other than those insuring the Project during the construction period, the Owner shall waive all rights in accordance with the terms of Subparagraph 11.3.7 for damages caused by fire or other perils covered by this separate property insurance. All separate policies shall provide this waiver of subrogation by endorsement or otherwise.

> \* \* \* \* \*

> 11.3.7 **Waivers of Subrogation.** The Owner and Contractor waive all rights against (1) each other and any of their subcontractors, sub-subcontracts, agents and employees, each of the other, and (2) the Architect, Architect's consultants, separate contractors described in article 6, if any, and any of their subcontractors, sub-subcontractors, agents and employees, for damages caused by fire or other perils to the extent covered by property insurance obtained pursuant to this paragraph 11.3 or other property insurance applicable to the Work, except such rights as they have to proceeds of such insurance held by the Owner as fiduciary. The Owner or Contractor, as appropriate, shall require of the Architect, Architect's consultants, separate contractors described in article 6, if any, and the subcontractors, sub-subcontractors, agents and employees of any of them, by appropriate agreements, written where legally required for validity, similar waivers each in favor of other

parties enumerated herein. The policies shall provide such waivers of subrogation by endorsement or otherwise. A waiver of subrogation shall be effective as to a person or entity even though that person or entity would otherwise have a duty of indemnification, contractual or otherwise, did not pay the insurance premium directly or indirectly, and whether or not the person or entity had an insurable interest in the property damaged.

Appellant's Appendix at 262–263.

The construction of the building addition was completed in the summer of 1995. On January 16, 1996, a snowstorm hit the Indianapolis area and a portion of the addition collapsed. Action Steel was insured by Midwestern under a policy issued after completion of the construction. Midwestern paid $1,391,818.90 to Action Steel for the loss. $44,971.21 of the $1,391,818.90 was for damage to the contents of the building. The remaining portion of the payment was for the loss of the building and loss of business income.[1]

On January 16, 1998, Midwestern, as subrogee of Action Steel, filed an amended complaint for damages to recover what it had paid. The complaint asserted four claims against Varco–Pruden: (1) Count I, negligence; (2) Count II, breach of express warranty; (3) Count III, breach of contract; and (4) Count IV, breach of implied warranties.

Varco–Pruden filed two motions for summary judgment. On January 28, 2002, Varco–Pruden filed its first motion for partial summary judgment, arguing that: (1) Midwestern's "claim of negligence against Varco–Pruden, with the exception of $44,971.21, [was] precluded as a matter of law due to Indiana's adoption of the economic loss doctrine;" and (2) "any recovery . . . in contract [was] barred by the valid waiver of subrogation." *Id.* at 96. Midwestern filed a cross-motion for summary judgment, and, on August 26, 2002, Varco–Pruden filed its second motion for partial summary judgment, wherein it argued that: (1) Midwestern's claim for negligence was barred because Midwestern could not show a causal connection between the loss and Varco–Pruden's conduct; (2) Midwestern's breach of contract claim was barred by lack of privity; (3) Midwestern's breach of express warranty claim was barred by lack of privity, lack of express warranty, and lack of proof of cause of the loss; and (4) Midwestern's breach of implied warranty claim was barred by lack of privity and lack of proof of the cause of the loss. *Id.* at 285–291. With respect to Varco–Pruden's argument that Midwestern failed to show a causal connection between the loss and Varco–Pruden's conduct, Varco–Pruden argued that:

> [Midwestern] alleges in Count I that the damages are the result of Varco–Pruden's negligent design of the building addition. Yet, [Midwestern] has provided no expert testimony directly showing such causation. By his own testimony, [Midwestern's] expert was not even engaged to investigate the cause of the collapse. Furthermore, Mr. Sapsford has not shown with any specific evidence that Varco–Pruden's design did not meet the applicable building code. His testimony is supposition with no calculations to support his conclusions. In the end, [Midwestern] has failed to advance *any* evidence regarding the cause of the col-

---

1. The record reveals that Midwestern paid $405 for damages for the loss on inland marine coverage. The parties do not specifically address these damages and have implicitly included them in their analysis and discussion of the damages other than contents. *See* Appellant's Brief at 6; Appellee's Brief at 3–4.

lapse, much less any evidence that demonstrates Varco–Pruden's actions caused the collapse. Such a failure is appropriate for review under Trial Rule 56. The absence of expert testimony on an essential element makes the entry of summary judgment "entirely appropriate." *Id.* at 286–287 (internal citations omitted).

In Midwestern's response to Varco–Pruden's second motion for summary judgment, it relied upon the deposition testimony of its engineering expert, Simon Sapsford. Specifically, Midwestern noted that Sapsford "concluded that the building addition was inadequately designed, that the roof was inadequately braced or improperly supported, that this failure led to the collapse of the roof when it had snow on it, and that the building addition's roof failed to meet the Indiana building code in effect at the time of the construction." *Id.* at 295. Midwestern also noted that Sapsford concluded that the "purlins, which were metal beams that attempted to support the roof, were improper," and that " 'these purlins were not capable of providing sufficient strength of stiffness for this condition. They would be dangerously over stressed and far too flexible as simple span members.' " *Id.* at 296 (quoting Exhibit D, p. 3). Midwestern also noted that Sapsford ultimately concluded that Varco–Pruden failed to meet the building code specified bracing requirements and that the "roof collapse ... was caused by the failure of these purlins to support the roof." *Id.* at 297.

The trial court granted Varco–Pruden's first motion for partial summary judgment and denied Midwestern's cross-motion for summary judgment, effectively limiting Midwestern's claim to $44,971.21 for damage to building contents under its negligence claim in Count I. However, the trial court also granted Varco–Pruden's second motion for summary judgment. The trial court's order provided, in relevant part, that:

> Varco–Pruden has shown that there is no genuine issue of material fact regarding the issue of causation of Plaintiffs' injuries and damages. Varco–Pruden was supplied specifications which referred to and incorporated the basic design load criteria contained in the 1991 Uniform Building Code (Construction Contract Specification, page 6, Section 13.4.) Varco–Pruden complied with these specifications in that Varco–Pruden met the standard set forth in the 1991 Uniform Building Code (Dr. James Fisher Depo. P. 35.) Plaintiffs have not come forth with admissible evidence which places the issue of Varco–Pruden's compliance with the 1991 Uniform Building Code in dispute. (Plaintiff's expert's guesses, supposition and conjecture are not sufficient to create a genuine issue of material fact to defeat summary judgment. *Hayden v. Paragon Steakhouse,* 731 N.E.2d 456, 458 (Ind.Ct. App.2000)).
>
> A contractor is not liable if it has merely carried out the plans, specifications, and directions supplied to it, since in that case the responsibility is assumed by the employer, at least when the plans are not so obviously dangerous that no reasonable contractor would follow them.... For this reason, Varco–Pruden's motion for summary judgment dated August 23, 2002, is GRANTED.

*Id.* at 22–23. The combined summary judgments of the trial court gave Varco–Pruden summary judgment against Midwestern as to all negligence claims as well as to all other claims.

## I.

The first issue is whether the trial court correctly determined that the waiver of insurance and subrogation provisions of

the construction contract barred recovery of all claims other than for negligence. When reviewing a trial court's decision to grant or deny summary judgment, we apply the same standard as the trial court. Accordingly, we must decide whether there is a genuine issue of material fact that precludes summary judgment and whether the moving party is entitled to judgment as a matter of law. *Carie v. PSI Energy, Inc.*, 715 N.E.2d 853, 855 (Ind. 1999). Once the moving party has sustained its initial burden of proving the absence of a genuine issue of material fact and the appropriateness of judgment as a matter of law, the burden shifts and the nonmoving party must respond by designating specific facts establishing a genuine issue for trial. *Gehlbach v. Hawkins*, 654 N.E.2d 877, 879 (Ind.Ct.App.1995). If the nonmoving party fails to meet this burden, summary judgment in favor of the moving party is appropriate. *Id.*

■ When reviewing a motion for summary judgment, we may consider only those portions of the pleadings, depositions, and any other matters specifically designated to the trial court by the parties for purposes of the motion for summary judgment. Ind. Trial Rule 56. Any doubt as to the existence of an issue of material fact or an inference to be drawn from the facts must be resolved in favor of the nonmoving party. *Cowe v. Forum Group, Inc.*, 575 N.E.2d 630, 633 (Ind.1991). Although the nonmoving party bears the burden of demonstrating that the trial court's grant of summary judgment was erroneous, we carefully assess the trial court's decision to ensure that the nonmovant was not improperly denied his or her day in court. *Colonial Penn Ins. Co. v. Guzorek*, 690 N.E.2d 664, 667 (Ind.1997).

■ We first consider whether the waiver of subrogation covers damage to the property insured under a policy issued after project completion. Midwestern argues that the trial court erred by granting Varco–Pruden's motions for partial summary judgment because the construction contract's waiver of subrogation clause does not apply to insurance acquired after completion of the project. Furthermore, Midwestern argues that even if the waiver of subrogation clause does apply, Varco–Pruden is not entitled to enforce it because Varco–Pruden is not a third party beneficiary of the construction contract.[2] Varco–Pruden argues that the waiver of subrogation clause applies to damages covered by the post construction property insurance and bars all of Midwestern's claims.

The Colorado Court of Appeals addressed a similar issue in *Town of Silverton v. Phoenix Heat Source Sys., Inc.*, 948 P.2d 9, 11–13 (Colo.Ct.App.1997). The contract at issue in *Town of Silverton* was a form agreement drafted by the AIA and is nearly identical to the contract at issue here. There, the town contracted with the general contractor for the installation of a new roof for the town hall. *Id.* at 10. Phoenix Heat, a subcontractor, designed, manufactured, and supplied an electric snow melting system that was installed on the roof of the town hall. *Id.* Approximately one and one-half years after the completion of the roofing project, the town hall was damaged in a fire. *Id.* at 11. The town was insured for the fire loss and received proceeds from its insurer. After the insurer compensated the town for the fire damage, "it assigned the town all of its interests, including rights of subrogation,

**2.** Midwestern also argues that the trial court erred by finding as matter of law that economic loss damages were not recoverable. Because we dispose of this matter on the basis of the construction contract's waiver of subrogation clause, and because we may affirm on any basis supported by the record, we need not address this issue.

for benefits it had paid due to the fire." *Id.* The town then filed an action against Phoenix Heat alleging that the fire had been caused by problems in the snow melting system that it had installed. *Id.*

Phoenix Heat filed a motion for summary judgment, arguing that the town had waived its rights to subrogate its claim to its insurer. *Id.* The town argued that the waiver of subrogation clause was only applicable to damages that occurred during the construction period, and, therefore, because the damages to the town hall had occurred after the roofing project had been completed, the waiver of subrogation clause was not applicable. *Id.* The trial court granted Phoenix Heat's motion for summary judgment. *Id.*

On appeal, the Colorado Court of Appeals held that there was no temporal restriction regarding the construction contract's waiver of subrogation clause, even though the construction had been completed for over one year. *Id.* at 13. The appeals court noted that "the fact that a contractor had finished its work and had no remaining insurable interest in the property did not terminate the waiver of subrogation rights," and that "paragraph 11.3.5 also provide[d] for a waiver of subrogation rights after final payment." *Id.* at 13. The Colorado Court of Appeals ultimately held that:

> Because property insurance applicable to the work, other than that obtained pursuant to paragraph 11.3.1, may remain in effect after the final completion date, so too may a waiver of subrogation rights under paragraph 11.3.7 remain in effect. Thus, we conclude that the waiver of subrogation clause barred subrogation for insured losses to the work occurring after the final completion date and the date final payment was made.

*Id.*

Likewise, the Georgia Court of Appeals also addressed a similar issue in *Colonial Props. Realty, L.P. v. Lowder Constr. Co., Inc.,* 256 Ga.App. 106, 567 S.E.2d 389, 390–393 (2002). Again, the contract at issue in *Colonial* was a form agreement drafted by the AIA and is nearly identical to the contract at issue here. There, Colonial had hired Lowder, a general contractor, to construct an apartment complex. *Id.* at 390. One year after the apartment complex was completed, a fire that was inadvertently started by a resident extensively damaged the complex. *Id.* Colonial's insurance company paid for the loss, and, the insurance company, in the name of Colonial, brought a subrogation action against Lowder. *Id.* Lowder moved for summary judgment, arguing that the contract it had executed with Colonial provided that Colonial had waived its subrogation rights for damages that occurred to the property after final payment. *Id.* Lowder relied, in part, upon Section 11.3.5 of the construction contract, which provided that:

> [I]f after final payment property insurance is to be provided on the completed Project through a policy or policies other than those insuring the Project during the construction period, the Owner shall waive all rights in accordance with the terms of Subparagraph 11.3.7 for damages caused by fire or other perils covered by this separate property insurance.

*Id.* Colonial argued that in accordance with Section 11.3.1 of the construction contract it was not required to maintain insurance after completion of the construction project and, therefore, had not waived subrogation at the time the loss had occurred. *Id.* at 391. The trial court granted Lowder's motion for summary judgment. *Id.*

On appeal, the Georgia Court of Appeals held that *Town of Silverton* was "squarely

on point" and recognized that it "must endeavor to harmonize all relevant provisions of the contract at issue." *Id.* Further, the appeals court, relying upon section 11.3.5, rejected Colonial's argument and noted that:

> Subparagraph 11.3.5 permitted, but did not require, Colonial to obtain a separate policy covering the completed project after final payment was made to Lowder. If Colonial obtained such a policy, then pursuant to this clause and Subparagraph 11.3.7, Colonial waived all subrogation rights for damages attributable to fire or other perils covered by this separate insurance.

*Id.* at 392.

Furthermore, in *South Tippecanoe Sch. Bldg. Corp. v. Shambaugh & Son, Inc.*, 182 Ind.App. 350, 360, 363, 395 N.E.2d 320, 326–328 (1979), we addressed the issue of waiver of subrogation in the context of a similar AIA construction contract. There, the loss occurred during construction. *Id.* at 352–353, 395 N.E.2d at 322. However, we noted that the construction contract indicated an "intent to place any risk of loss on the Work on insurance," and that the "requirement of waivers, ... [was] consistent with an intent to place the risk of loss on insurance." *Id.* at 360, 395 N.E.2d at 326. Moreover, we reasoned that "provisions of Article 11 of the General Conditions reveal a 'studied attempt' by the parties to require construction project risks to be covered by insurance and to 'allocate among the parties the burden of acquiring such insurance.'" *Id.* Ultimately, we held that certain parties were intended insureds and could, therefore, enforce the construction contract's waiver of subrogation clause. *Id.* at 362–363, 395 N.E.2d at 327–328.

Here, we find *Town of Silverton* and *Colonial* persuasive. Like the Georgia Court of Appeals, we also find that Section 11.3.5 of the AIA construction contract is controlling. As previously mentioned, Section 11.3.5 provides, in part, that:

> If during the Project construction period the Owner insures properties, ... or if after final payment property insurance is to be provided on the completed Project through a policy or policies other than those insuring the Project during the construction period, the Owner shall waive all rights in accordance with the terms of Subparagraph 11.3.7 for damages caused by fire or other perils covered by this separate property insurance.

Appellant's Appendix at 263. Thus, although Varco–Pruden had completed its construction on the project, Section 11.3.5 of the contract provides that Action Steel "shall waive all rights in accordance with the terms of Subparagraph 11.3.7." *Id.* at 263. Therefore, even though this insurance was purchased after completion of construction, Action Steel, and thus Midwestern, was bound to waive all rights against Varco–Pruden for damages covered by the insurance and the policy was required to waive subrogation.

■ Midwestern also argues that even if the waiver of subrogation clause is applicable, Varco–Pruden cannot enforce it because Varco–Pruden is not a third party beneficiary of the contract. In *Shambaugh*, we addressed the issue of whether certain subcontractors were beneficiaries of the waiver of subrogation clause contained within the construction contract. 182 Ind.App. at 354, 395 N.E.2d at 323. There, we held that:

> The construction contract here explicitly required that the property insurance procured by South Tippecanoe include the interests of the various contracting parties. That the protection thereby afforded was intended to constitute the exclusive source for redress of damages

sustained is buttressed by the waiver provisions discussed above. Therefore, these provisions convincingly lead to the conclusion that the parties were to be limited in recovery for property damages to the proceeds of the insurance required to be carried under the contract, rather than to the individual assets of a negligent Defendant.

*Id.* at 362–363, 395 N.E.2d at 327–328. In reaching this conclusion, we relied, in part, upon section 11.3.1 of the construction contract, which provided that "[t]his insurance shall include interests of the Owner, the Contractor, Subcontractors and Sub-subcontractors in the Work." *Id.* at 355, 395 N.E.2d at 323.

Here, the construction contract includes language indicating that if Action Steel obtained property insurance after project completion it would waive its rights against contractors and subcontractors. Specifically, as previously mentioned, Section 11.3.5 of the construction contract discusses the acquisition of property insurance after project completion and provides that "if after final payment property insurance is to be provided on the completed Project through a policy or policies other than those insuring the Project during the construction period, the Owner shall waive all rights in accordance with the terms of Subparagraph 11.3.7." Appellant's Appendix at 263. Further, Section 11.3.1 addresses the extent of property insurance and provides that "[t]his insurance shall include interests of the Owner, the Contractor, Subcontractors and Sub-subcontractors in the Work." *Id.* at 262. Varco–Pruden, as the designer, manufacturer, and supplier of the pre-engineered building system used in the construction of the building addition, was a subcontractor within the meaning of Section 11.3.1 of the construction contract. Moreover, Section 11.3.7, the waiver of subrogation clause, provides that "[t]he Owner and Contractor waive all rights against (1) each other and any of their subcontractors, sub-subcontractors, agents and employees." *Id.* at 263. Accordingly, like the subcontractors in *Shambaugh*, Varco–Pruden is a beneficiary of the waiver of subrogation clause contained within the construction contract executed between Midwestern and Action Steel.

■ Midwestern also argues that Varco–Pruden has failed to satisfy the third party beneficiary analysis outlined in *Miller v. Partridge*, 734 N.E.2d 1061 (Ind.Ct. App.2000), *trans. denied.* A person or entity who is not a party to a contract may directly enforce that contract as a third party beneficiary if: "(1) the parties intend to benefit a third party; (2) the contract imposes a duty on one of the parties in favor of the third party; and (3) the performance of the terms of the contract renders a direct benefit to the third party." *Id.* at 1064.

Varco–Pruden argues that it has satisfied the first element, which requires that the parties intended to benefit a third party. The plain reading of the construction contract indicates that Action Steel intended to benefit Varco–Pruden. As previously mentioned, the construction contract provides for the acquisition of property insurance after project completion and indicates that the insurance "shall include the interest of ... subcontractors." Appellant's Appendix at 262. Furthermore, the contract provides that if Action Steel acquired insurance after project completion, it "shall waive all rights in accordance with the terms of Subparagraph 11.3.7," which provides that "[t]he Owner and Contractor waive all rights against (1) each other and any of their subcontractors, sub-subcontractors, agents and employees." *Id.* at 263. Accordingly, the first element is satisfied because when Action Steel pur-

chased property insurance after the project was completed, it intended that subcontractors, such as Varco–Pruden, would benefit from the waiver of subrogation clause.

Varco–Pruden also argues that it has satisfied the second element, which requires that the contract impose a duty upon one of the parties in favor of the third party. Here, as we have already addressed, Section 11.3.5 of the construction contract provides that if Action Steel purchased property insurance after project completion, it agreed to waive its right with regard to subrogation with respect to subcontractors such as Varco–Pruden. Accordingly, the second element is satisfied because the construction contract imposed a duty upon Action Steel in favor of Varco–Pruden.

Finally, Varco–Pruden argues that it has satisfied the final element, which requires that the performance of the terms of the contract render a direct benefit to a third party. Again, the construction contract provides that if Action Steel purchased property insurance after project completion it would waive its right of subrogation with regard to subcontractors, thereby requiring that it render a direct benefit to those subcontractors, namely Varco–Pruden. Varco–Pruden has satisfied all three elements of the third party beneficiary test. Thus, Varco–Pruden is a third party beneficiary and can enforce the waiver of subrogation clause contained within the construction contract. *See, e.g., Miller,* 734 N.E.2d at 1064–1065 (affirming the trial court's determination that the children were third party beneficiaries).

## II.

■ The second issue is whether the waiver of insurance and subrogation provisions of the construction contract bar recovery for negligence. Before we address this issue, we must consider the fact that Varco–Pruden did not claim in the trial court that the waiver of subrogation provision barred Midwestern's negligence claim. It moved for summary judgment based on waiver of subrogation only on the contract and warranty claims of Midwestern. On appeal, however, Varco–Pruden argues that the waiver of subrogation bars all of Midwestern's claims, including its negligence claim. Failure to make a claim or argument to the trial court ordinarily precludes making it on appeal. However, Midwestern did not, in its reply brief, challenge Varco–Pruden's expansion of its waiver of subrogation argument to Midwestern's negligence cause of action. Because we will affirm on any basis supported by the record, we will affirm if the waiver of subrogation applies to claims for damages based on a negligence theory. *See, e.g., Woods v. Harris,* 600 N.E.2d 163, 164 (Ind.Ct.App.1992).

■ In order to determine whether the waiver of insurance and subrogation provisions of the construction contract bar recovery for negligence, we must look to the construction contract itself. Section 11.3.1 provides, in part, that: "Unless otherwise provided, the Owner shall purchase and maintain, ... property insurance ... for the entire Work." Appellant's Appendix at 262. Section 11.3.1.1 of the policy provides that the "[p]roperty insurance shall be on an all-risk policy form and shall insure against the perils of fire and extended coverage and physical loss or *damage* including ... theft, vandalism, malicious mischief, collapse ....," and section 11.3.5 provides, in part, that "the Owner shall waive all rights ... for *damages* caused by fire or other perils covered by this separate property insurance." *Id.* (emphasis added). Further, section 11.3.7 provides, in part, that "the Owner and Contractor waive all rights ... for *damages* caused by

fire or other perils...." *Id.* (emphasis added).

The plain language of the construction contract indicates that the insurance coverage and waiver of subrogation rights pertain to damage caused by perils insured against such as fire and collapse. It is the relationship between the damage and the perils insured against that controls the waiver of subrogation. Here, it is the collapse of the building addition that is insured against by the Midwestern policy. Waiver does not depend on what theory, contract, warranty, or negligence, might be asserted to seek recovery for the damages caused by the collapse. The waiver of subrogation does bar recovery for negligence. *See, e.g., Morsches Lumber, Inc. v. Probst,* 180 Ind.App. 202, 206, 388 N.E.2d 284, 287 (holding that owner's negligence claim was barred by the construction contract requirement to provide insurance); *Shambaugh & Son, Inc.,* 395 N.E.2d at 333 (holding that waiver of subrogation barred owner's negligence claim).

### III.

The next issue is whether the waiver of insurance and subrogation provisions of the construction contract bar recovery for amounts paid for damages to the contents of the building. As previously mentioned, Midwestern paid Action Steel $1,391,818.90 for the loss. $44,971.21 of the $1,391,818.90 was for damage to the contents of the building.

As noted, the waiver of subrogation applies to recovery for damages from perils insured against under the property insurance policy. However, the waiver of subrogation is limited in scope as to what property is covered. In *Town of Silverton,* 948 P.2d at 12, the Colorado Court of Appeals addressed the issue of whether the scope of the waiver of subrogation was limited to the value of the work. *See*

*supra* Part I p. 9–10. As previously mentioned, the contract at issue in *Town of Silverton* was a form agreement drafted by the AIA and is nearly identical to the contract at issue here. In *Town of Silverton,* the appeals court held that "the scope of the waiver of subrogation [was] limited to the value of the work performed under the contract, i.e., the new roof, and [was] inapplicable to other parts of the town hall damaged in the fire." *Id. see also Butler v. Mitchell–Hugeback, Inc.,* 895 S.W.2d 15, 22 (Mo.1995) (holding that the waiver of subrogation was only effective to the extent of the value of the work), *reh'g denied; S.S.D.W. Co. v. Brisk Waterproofing Co., Inc.,* 76 N.Y.2d 228, 557 N.Y.S.2d 290, 556 N.E.2d 1097, 1101 (1990) (noting that the pursuant to the standard form AIA contract "Work include[d] only the exterior walls and the floor of the parking garage," and, therefore, "waiver of subrogation rights extend[ed] only to those specific areas"); *but see Lloyd's Underwriters v. Craig & Rush, Inc.,* 26 Cal.App.4th 1194, 1199–1200, 32 Cal.Rptr.2d 144 (Cal.Ct.App. 1994) (holding that the waiver of subrogation clause did not restrict waiver of damages to the work but, rather, the contract required a waiver against the other party to the extent the injured party was reimbursed by insurance).

Like the contract at issue in *Town of Silverton,* here, the construction contract provides that the scope of the waiver of subrogation is limited to the work performed under the contract. Specifically, the construction contract requires the Owner to purchase insurance "for the entire Work." Appellant's Appendix at 262. The construction contract defines "Work" to mean "the construction and services required by the Contract Documents, whether completed or partially completed, and includes all other labor, materials, equipment and services provided or to be

provided by the Contractor to fulfill the Contractor's obligations. The Work may constitute the whole or part of the Project." *Id.* at 248. By definition, "Work" does not include the contents that were placed in the building after it was completed. Further, the waiver of subrogation applies to damage caused by perils insured against by the "property insurance obtained pursuant to this Paragraph 11.3 or other property insurance applicable to the Work...." *Id.* at 263. Accordingly, the scope of the waiver of subrogation is limited to the value of the Work performed under the contract, i.e., the building addition. Because the contents are not part of the Work or completed building addition and because there was no requirement to waive subrogation rights as to property damage to property other than the Work, we hold that the waiver of subrogation does not bar recovery for damage to the contents of the building. *See, e.g., Town of Silverton,* 948 P.2d at 12.

### IV.

██ The last issue is whether there is evidence to create a genuine issue of fact as to whether the cause of the collapse of the building addition was an act or omission of Varco–Pruden. Specifically, we must address whether there is a genuine issue of material fact with regard to whether Varco–Pruden's conduct caused the $44,971.21 loss to the contents of the property. Both Midwestern's and Varco–Pruden's arguments rely primarily upon Sapsford's deposition testimony and written reports. Varco–Pruden argues that Sapsford's testimony is nothing more than speculation. Midwestern argues that "Sapsford concluded that the building addition was inadequately designed, that the roof was inadequately braced or improperly supported, that this failure led to the collapse of the roof when it had snow on it, and that the building addition's roof failed

to meet the Indiana building code in effect at the time of the construction." Appellant's Brief at 18.

██ Causation, or the requirement of a reasonable connection between a defendant's conduct and the damages which a plaintiff has suffered, is an essential element in a negligence action. *Smith v. Beaty,* 639 N.E.2d 1029, 1033 (Ind.Ct.App. 1994). "This element requires, at a minimum, causation in fact—that is, that the harm would not have occurred 'but for' the defendants' conduct. The 'but for' analysis presupposes that, absent the tortious conduct, a plaintiff would have been spared suffering the claimed harm." *Daub v. Daub,* 629 N.E.2d 873, 877 (Ind.Ct.App. 1994), *trans. denied.* The plaintiff's burden may not be sustained with evidence based merely upon supposition or speculation. *Smith,* 639 N.E.2d at 1033. When the issue of causation is not within the understanding of a lay person, expert witness testimony on the issue is necessary. *Ind. Mich. Power Co. v. Runge,* 717 N.E.2d 216, 231 (Ind.Ct.App.1999), *reh'g denied.*

Here, Midwestern hired Sapsford to investigate the building addition structure after its collapse. Sapsford is a professional engineer with twenty-one years of experience in the field of engineering. He also has significant experience with pre-engineered metal buildings, like the one at issue here. Specifically, Midwestern asked Sapsford to review the building addition's general conformance with the building code in effect at the time. Sapsford performed this investigation by reviewing documents provided to him by System Builders and Varco–Pruden.

In Sapsford's deposition testimony, he testified that if the building addition had been constructed in accordance with the applicable building code, it would have

been stronger, and it "may have survived this incident." Appellant's Appendix at 338. Sapsford also prepared a report detailing his findings regarding the building addition structure. In the report, Sapsford concluded that: "The roof purlins were analyzed as simple span members in conformance with the published frame reactions provided in the VPB documents.... These purlins were not capable of providing sufficient strength or stiffness for this condition." *Id.* at 342. Sapsford also noted that the building code bracing requirements were not met. *Id.* at 343. Ultimately, Sapsford concluded that the building addition structure was not in conformance with the building code and that the "structural failure was probably initiated by a stability failure of the "Z" purlins.... In order for the purlin to carry load up to the capacity of the [building code section] it must be restrained from the lateral torsional bucking, web crippling and the other failure modes. These purlins were not braced well enough to prevent this and the end of connection offered only minimal rotational resistance." *Id.* at 343–344. In a subsequent report, Sapsford stated that his original conclusions were unchanged, adding that "[i]t would appear that the roof system was not adequately braced and an insufficient design load was used. If adequate bracing and loading had been used then the roof would have safely supported a larger loading." *Id.* at 347. Moreover, Reid Litwick, the owner operator of Action Steel, testified during his deposition that he expected the building addition to comply with all relevant Indiana building codes. Litwick also stated that he was certain that a representative from Systems Builders had told him that the building addition would meet all applicable codes.

Based upon our review of the record, we conclude that there is a genuine issue of material fact with regard to whether Var-co–Pruden's conduct caused the $44,971.21 loss to the contents of the property. We disagree with Varco–Pruden's suggestion that Sapsford's deposition testimony amounts to mere speculation and conjecture. Rather, we conclude that Sapsford's testimony and written reports create a genuine issue of material fact as to the element of causation. Therefore, the trial court erred by entering summary judgment for Varco–Pruden on the issue whether Varco–Pruden's conduct caused the $44,971.21 loss to the contents of the property, and we remand to the trial court for proceedings consistent with this opinion.

In summary, the construction contract required Action Steel to waive all rights against Varco–Pruden for damages covered by the insurance, and Varco–Pruden, as a third party beneficiary, can enforce the waiver of subrogation clause contained within the construction contract. However, the waiver of insurance and subrogation provisions only apply as to the building addition itself and do not preclude subrogation recovery as to the contents. Therefore, Midwestern's Count I negligence claim as to the $44,971.21 loss to the contents of the property is not precluded by the waiver of subrogation clause. Because there exists a genuine issue of material fact as to whether Varco–Pruden's conduct caused the $44,971.21 loss to the contents of the property, we hold that the trial court erred by entering summary judgment for Varco–Pruden on this issue.

For the foregoing reasons, we affirm the judgment of the trial court granting Varco–Pruden's motions for summary judgment because the construction contract required Action Steel to waive all rights against Varco–Pruden for damages covered by the insurance, and reverse the judgment of the trial court finding that there exists no genuine issue of material

fact with regard to whether Varco–Pruden caused the $44,971.21 loss to the contents of the property, and we remand for proceedings consistent with this opinion.

Affirmed in part, reversed in part, and remanded.

BROOK, C.J., concurs.

BAKER, J., dissents in part with separate opinion.

BAKER, Judge, dissenting in part.

Though I agree with the majority's holding in Parts III and IV, I respectfully dissent from its determination that the waiver of subrogation clause in the parties' building contract applied to a completed building. Because insurance was not required by the building contract *after* construction was completed, I fail to see how the policy issued by Midwestern was contemplated to protect both parties.

Midwestern argues that the subrogation waiver clause applies only to insurance obtained while a building is being constructed. Midwestern notes that the contract's General Conditions sections states that insurance coverage must be maintained "until final payment has been made as provided in Paragraph 9.10 or until no person or entity other than Owner has an insurable interest in the property." Appellant's App. p. 86. The part of the contract that waives subrogation applies to "property insurance applicable to the Work." Appellant's Br. p. 11. Midwestern reasons, quite logically, that the waiver of subrogation could not possibly apply to a finished building because the contract itself only requires that an owner hold an insurance policy until final payment is made. Thus, Midwestern contends that the scope of the subrogation waiver cannot exceed that of the insurance requirement itself.

On the other hand, Varco–Pruden claims that the subrogation waiver "is a widely used, standard provision taken directly from the American Institute of Architects' document A201." Appellees' Br. p. 8. Varco–Pruden notes that several courts in other jurisdictions have stated that the clause bars an insurer from suing under its right of subrogation.

For instance, in *Town of Silverton v. Phoenix Heat Source System, Inc.,* 948 P.2d 9 (Colo.Ct.App.1997), the Colorado Court of Appeals was presented with the same question before us today. The town of Silverton entered into a construction contract—containing subrogation language nearly identical to that of the contract in this case—with Phoenix for the installation of a new roof on the town hall. The roofing was completed, and a final payment was made to Phoenix. More than one year later, a fire damaged the roof. The Colorado public agency that insured the town hall exercised its right of subrogation and brought an action against Phoenix, alleging contract-based claims. The trial court entered summary judgment for Phoenix because it found the subrogation waiver barred the suit. The Colorado Court of Appeals found that the Town's claim was barred by the subrogation waiver and held that there was a difference between regular property insurance and "insurance an owner is required to procure under paragraph 11.3.1." *Id.* at 12–13. The insurance called for under section 11.3.1, the court held, was a type of policy that ended upon final payment for the construction. *Id.* at 13. The insurance referred to in section 11.3.7 as "other property insurance applicable to the Work" was, the court held, regular property insurance that may continue in force even after construction is complete. *Id.* The court then reasoned that because "property insurance applicable to the work, other than that obtained pursuant to paragraph

11.3.1, may remain in effect after the final completion date, so too may a waiver of subrogation." *Id.* Because "the town [did] not claim it obtained [the] insurance to comply with the [construction] agreement," the insurance policy provided by the public agency was deemed to be "other property insurance applicable to the work," and, thus, recovery was barred. *Id.*

The Georgia Court of Appeals took up the same issue in *Colonial Properties Realty, L.P. v. Lowder Construction Co., Inc.*, 256 Ga.App. 106, 567 S.E.2d 389 (2002), and reached a similar result. In that case, Colonial hired Lowder to build an apartment complex, entering into a contract similar to that at issue here. One year after the apartments were built and placed into service, a fire destroyed part of a building. Colonial's insurer paid for the fire damage and brought a contract-based action against Lowder under its subrogation right. The trial court entered summary judgment for Lowder on account of the subrogation waiver provision in the construction contract. The insurance company appealed, and the *Lowder* court adopted the *Silverton* court's reasoning, adding:

> [W]here parties to a business transaction mutually agree that insurance will be provided as a part of the bargain, such agreement must be construed as providing mutual exculpation to the bargaining parties who must be deemed to *have agreed to look solely to the insurance* in the event of loss and not to liability on the part of the opposing party.

*Id.* at 392.

Varco–Pruden also argues that Indiana precedent provides for the allocation of risk through a waiver of subrogation clause. I am mindful that this court has addressed the issue of waiver of subroga-

tion in *South Tippecanoe School Bldg. Corp. v. Shambaugh & Son, Inc.*, 182 Ind. App. 350, 395 N.E.2d 320 (1979). In that case, Shambaugh, a builder, constructed a school for the Building Corporation. As part of the construction contract, which was an earlier version of the AIA's document A201, the Building Corporation was required to obtain "property insurance upon the entire Work at the site to the full insurable value thereof. This insurance shall include the interests of the Owner, the Contractor, Subcontractors and Sub-subcontractors in the Work and shall insure against the peril of Fire, Extended Coverage, Vandalism and Malicious Mischief." *Id.* at 354–55, 395 N.E.2d at 323. The contract also provided for the waiver of subrogation rights. The Building Corporation purchased builder's risk insurance, which, by its own terms, extended coverage *only during the construction process.* A fire damaged the building during construction, and—after indemnifying the Building Corporation—the insurer sought damages from Shambaugh under a negligence theory. We held that the insurer could not recover because "a severe conflict of interest would exist if an insurer were permitted to recover from one of its own insureds." *Id.*, 182 Ind.App. at 364, 395 N.E.2d at 329 (quoting *Baugh–Belarde*, 561 P.2d at 1214). Shambaugh was an "insured" because the contract required the Building Corporation to obtain insurance to protect "the interests of the Owner, *the Contractor,* Subcontractors and Sub-subcontractors in the Work." *Id.*, 182 Ind.App. at 354, 395 N.E.2d at 323 (emphasis added).

In my view, this case is inapposite to *Silverton* and *Shambaugh* because the policy issued by Midwestern was purchased *after* construction was completed. In *Silverton*, the town hall was insured at all times—*before* and after construction—by a

state agency. Thus, the same instrumentality of insurance was providing coverage for the town hall from construction until the fire. In *Shambaugh,* the insurance contract—a builder's risk insurance policy—was issued *before* construction began. In both of these cases, the insurer issued its policy at a time when insurance was *required* by the building contract. A waiver of subrogation is appropriate in such instances, as recognized by the *Shambaugh* court, because "a severe conflict of interest would exist if an insurer were permitted to recover from one of its own insureds." *Id.* at 364, 395 N.E.2d at 329 (quoting *Baugh–Belarde,* 561 P.2d 1211 at 1214). Moreover, requiring that insurance be procured *before* construction begins demonstrates that the parties "have agreed to look solely to the insurance in the event of loss." *Lowder,* 567 S.E.2d at 392. Thus, it is reasonable to conclude that when insurance is required before construction begins, it is meant to protect both parties. *See id.* at 371, 395 N.E.2d at 333.

Here, however, Varco–Pruden is attempting to assert the subrogation waiver clause against Midwestern even though insurance was not necessary. The contract only required that insurance be maintained until construction *ended.* Appellant's App. p. 86. I fail to see how the insurance policy issued by Midwestern was contemplated to protect *both* parties, as it was not even required by the building contract.

The majority notes that Section 11.3.5 of the contract provides, in relevant part, that "[I]f after final payment property insurance is to be provided on the completed Project through a policy or policies other than those insuring the Project during the construction period, the Owner shall waive all rights in accordance with the terms of Subparagraph 11.3.7 for damages...." Appellant's App. p. 263. The majority rea-

sons, then, that since insurance was procured to insure the completed building after final payment, "Action Steel, and thus Midwestern, was bound to waive all rights against Varco–Pruden for damages...." Op. p. 670.

The majority would undoubtedly be correct if insurance was *required* after building completion. An insurance *requirement* in the contract would show that the parties "agreed to look solely to the insurance" to recover any losses. *Lowder,* 567 S.E.2d at 392. A statement such as "It shall be the duty of the Owner to procure insurance after completion" could have been included, and, thus, a waiver of subrogation would appropriately bind both parties because the parties' intent was evident. Here, however, the contract expressly required insurance *only* during construction. Appellant's App. p. 86. Such a requirement shows that the parties' intent was to protect both parties only during construction.

Moreover, the phrase "if ... insurance is to be provided on the completed Project" is key to Section 11.3.5. The qualifier "to be" is used "to express intention, *obligation,* or future action." *Am. Heritage Dictionary* 155 (4th ed.2000) (emphasis added). Thus, the phrasing in Section 11.3.5 simply means that *if* the construction contract creates an *obligation* in the owner to purchase insurance after construction is completed, then a waiver of subrogation results. Here, though, there is *no obligation* in the contract that insurance be provided after construction is completed. To the contrary, only insurance during construction was necessary. Hence, it is apparent to me that the provision in Section 11.3.5 cannot be read to extend a waiver of subrogation clause.

In sum, both parties did not agree to "look solely to the insurance" to recover any losses. Thus, I would reverse the trial

court's entry of summary judgment for System Builders and Varco–Pruden on Midwestern's contract claim and remand this case for trial on the merits.