**AUTOMOBILE INSURANCE COMPANY OF HARTFORD, CONNECTICUT, Appellant,**

v.

**UNITED H.R.B. GENERAL CONTRACTORS, INC. and Richard A. Howerton, Inc., Respondents.**

No. 64060.

Missouri Court of Appeals,
Eastern District,
Division Four.

April 26, 1994.

Motion for Rehearing and/or Transfer to Supreme Court Denied May 19, 1994.

Application to Transfer Denied
June 21, 1994.

---

F. Douglas O'Leary, Thomas J. Magee, Moser & Marsalek, P.C., St. Louis, for appellant.

John I. Schaberg, Roberts, Perryman, Bomkamp & Meives, P.C., and Joseph M. Kortenhof, Kortenhof & Ely, St. Louis, for respondents.

AHRENS, Judge.

In this subrogation action to recover for property damage arising from a fire, the trial court sustained defendants' motions for summary judgment and entered judgment for defendants. Plaintiff appeals. We reverse and remand.

In its petition, plaintiff alleged that it was a subrogated insurer of First Baptist Church of Jefferson City (First Baptist) and that it was required to pay $4,835,468.25 under its policies due to property damage sustained by First Baptist in a fire that took place on May 24, 1987. Plaintiff's petition alleged the fire was the result of the faulty installation of an electrical system and alleged alternate theories of general negligence, specific negligence and breach of contract and warranty.

Defendants filed motions for summary judgment which the trial court sustained. The trial court had before it materials submitted by the joint stipulation of the parties. These materials included the contract between First Baptist and defendant United H.R.B. General Contractors, Inc. (United H.R.B.), the General Conditions of that contract, and the subcontract between United H.R.B. and defendant Richard A. Howerton, Inc. (Howerton). In addition, the stipulation included affidavits as to the facts, the deposition of First Baptist's building committee chairman, and the insurance policy. Also included were documents concerning the completion of the construction project, final payment and the final payment check.

The sequence of events relevant to this appeal are as follows: First Baptist entered into a contract for the construction of a new sanctuary and educational facilities with defendant United H.R.B. on March 12, 1984. United H.R.B. then subcontracted the electrical work to defendant Richard A. Howerton, Inc. The project was substantially completed on or about September 30, 1985. First Baptist dedicated the new facilities in October, 1985. First Baptist purchased its insurance policy from plaintiff, the effective dates of which were June 1, 1986 through June 1, 1987. Final payment on the contract was made on December 22, 1986. The fire occurred on May 24, 1987.

Plaintiff's initial point on appeal is that the trial court erred in sustaining defendants' motions for summary judgment and barring plaintiff's action. In support, plaintiff lists six separate subpoints as bases for the alleged error. In subpoint two, plaintiff claims the contract was ambiguous as to the duration of the waiver of liability. We find this point dispositive of the appeal.

Defendants' motions for summary judgment relied primarily on the following provisions of the contract between First Baptist and defendant United H.R.B. Subparagraph 11.3.1 reads in part as follows:

Unless otherwise provided, the Owner shall purchase and maintain property insurance upon the entire Work at the site to the full insurable value thereof.

Subparagraph 11.3.6 reads as follows:

The Owner and Contractor waive all rights against (1) each other and the Subcontractors, Subcontracting agents and employees each of the other, and (2) the Architect and separate contractors, if any, and their subcontractors, sub-subcontractors, agents and employees for damages caused by fire or other perils to the extent covered by insurance obtained pursuant to this Paragraph 11.3 or any other property insurance applicable to the Work, except such rights as they may have to the proceeds of such insurance held by the Owner as trustee.

The foregoing waiver afforded the Architect, his agents and employees shall not extend to the liability imposed by Subparagraph 4.18.3. The Owner or the Contractor, as appropriate, shall require of the Architect, separate Contractors, Subcontractors and Sub-subcontractors by appropriate agreements, written where legally required for validity, similar waivers each in favor of all other parties enumerated in this Subparagraph 11.3.6.

Subparagraph 1.1.3, which defines "work", reads as follows:

The Work comprises the completed construction required by the Contract Documents and includes all labor necessary to produce such construction, and all materials and equipment incorporated or to be incorporated in such construction.

In their motions for summary judgment, defendants' position was that the above provisions exonerated and discharged United H.R.B. from any claim by plaintiff based on fire damage done to the church as a result of construction activity, even though the fire occurred after final payment on the contract. The trial court agreed and found, as a matter of law, defendants were entitled to summary judgment.

An appellate court's review of a summary judgment is fundamentally de novo. *ITT Commercial Finance Corp. v. Mid–America Marine Supply*, 854 S.W.2d 371, 376 (Mo. banc 1993). Our criteria for testing the propriety of summary judgment are the same as those employed by a trial court determining in the first instance the propriety of sustaining the motion. *Id.* "The burden on a summary judgment movant is to show a right to judgment flowing from facts about which there is no genuine dispute." *Id.* at 378. "The key to summary judgment is the undisputed right to judgment as a matter of law; not simply the absence of a fact question." *Id.* at 380.

In the present case, there is little dispute as to the facts. The issue is whether the language of the construction contract created a waiver of subrogation which extended after completion of the project and final payment on the contract. Plaintiff's position is that the trial court misconstrued the terms of the contract in ruling that defendants were entitled to summary judgment as a matter of law. We agree.

First Baptist purchased its insurance policy from plaintiff on June 1, 1986, approximately seven months prior to final payment on the project. The policy had a duration of one year. Of particular importance in this case is the fact that the fire occurred after completion of the project and final payment on the contract, but before the policy's term had elapsed.

Plaintiff argues that there is no specific and express provision in the contract which unequivocally creates a waiver of subrogation which continues after final payment. Plaintiff also argues that the waiver of subrogation clause, subparagraph 11.3.6, when considered in the context of the whole contract, is ambiguous as to duration.

Defendants' position is (1) under Subparagraph 11.3.1, First Baptist was obligated to provide property insurance as long as defendants retained an insurable interest in the property; (2) the contract expressly and unambiguously waived the right of each party to assert claims against the other to the extent that those claims were covered by insurance; (3) that waiver applies for the entire term of the policy, i.e., "claims against the contractor are barred only so long as the owner retains insurance on the property;" and (4) having chosen to provide insurance beyond that required by the contract, First Baptist and plaintiff, its insurer, are bound by that choice and the resulting waiver.

Our inquiry is whether the contract was so clear and unambiguous as to entitle defendants to summary judgment as a matter of law. "Whether an ambiguity exists in the terms of a written instrument is a question of law which must be resolved prior to any factual determination about the meaning of the allegedly ambiguous language." *Phillips v. Authorized Investors Group*, 625 S.W.2d 917, 919 (Mo.App.1981). "A contract is ambiguous only when it is reasonably susceptible of different constructions. In determining whether or not there is such an ambiguity as calls for construction, the whole instrument must be considered." *J.E. Hathman,*

*Inc. v. Sigma Alpha Epsilon Club,* 491 S.W.2d 261, 264 (Mo. banc 1973).

Subparagraph 11.3.6, when read in isolation, seems to constitute an unambiguous waiver of rights between the parties. When read in tandem with Paragraph 9, however, its scope becomes less clear. Subparagraphs 9.9.4 and 9.9.5 deal specifically with the effects that final payment has on claims between the parties. Subparagraph 9.9.4.2 reads as follows:

> The making of final payment shall constitute a waiver of all claims by the Owner except those arising from faulty or defective Work appearing after Substantial Completion.

This provision expressly reserves the Owner's right to bring claims after final payment for defective work. This is contradictory to defendants' position that subparagraph 11.3.6 unambiguously creates a waiver of all claims between the parties, even those which arise after final payment. This contradiction is sufficient to constitute an ambiguity.

Having found that an ambiguity exists in the contract as to the duration of the waiver, we must construe the contract to reconcile the ambiguity. "Where possible, we reconcile provisions of a written instrument which appear contradictory, and, in doing so, we give preference to the specific provisions over the general." *Phillips,* 625 S.W.2d at 921.

Subparagraph 11.3.6 contains no express language as to the duration of the waiver. Defendants argue that the language "to the extent covered by insurance obtained pursuant to this Paragraph 11.3 or any other property insurance applicable to the Work" means that First Baptist waives its rights against defendants while defendants have an insurable interest in the property. Defendants further argue that they have an insurable interest in the property as long as First Baptist maintains insurance on the property. Particularly, because final payment under the contract had not yet been made when First Baptist acquired the insurance policy from plaintiff, defendants retained insurable interests in the work. We disagree.

Defendants contend that other courts have recognized that the waiver in Subparagraph 11.3.6 applies even when an owner chooses to provide insurance with more expansive coverage than that required by the construction contract. *State v. USF&G,* 577 So.2d 1037 (La.App. 4 Cir.), *writ denied,* 581 So.2d 684 (1991); *E.C. Long, Inc. v. Brennan's of Atlanta, Inc.,* 148 Ga.App. 796, 252 S.E.2d 642 (1979). Defendants argue that this principle should apply to the present case, where First Baptist purchased insurance exceeding in temporal scope its obligation under the contract. None of the cases cited by defendants deals with extending the waiver beyond the end of the contract, however. Given the language of the contract taken as a whole, we are not persuaded that the waiver was intended to extend beyond the life of the contract.

According to Subparagraph 9.9.1, the contractor is not entitled to final payment until he has fully performed his obligations under the contract. Once the contractor has fully performed, the owner's remaining contractual obligation is to make final payment. At that point, the contractor's remaining interest in the project is the receipt of final payment. Therefore, once final payment is made, the contractor retains no further interest in the project and the Subparagraph 11.3.6 waiver is rendered inapplicable.

In their motions for summary judgment, defendants stated that the term "work", as defined in Subparagraph 1.1.3, included the completed buildings. They argued that this demonstrated that the agreement as to waiver of claims extended beyond final payment. We agree that "work" includes the completed structure, but only for the time interval between the completion of the building and final payment. We find that the completed structure is no longer "work" after final payment is made and therefore the waiver of claims only applies to the completed structure up to the time of final payment.

As a matter of construction, Subparagraph 11.3.6 is a general waiver provision whereas Paragraph 9 deals specifically with waivers which result from the making of final payment. As was stated before, in construing contradictory provisions, we give preference to specific provisions over general provisions.

A reasonable construction of the contract which reconciles Paragraphs 9 and 11 is that Paragraph 11 contains the waiver provision which is applicable prior to final payment and Paragraph 9 contains waiver provisions effective after final payment. We find that the making of final payment terminated the general waiver of Subparagraph 11.3.6 and triggered the waiver provisions of Paragraph 9. Subparagraph 9.9.4.2 specifically provides that the owner does not waive its claims for faulty or defective work appearing after substantial completion.

For the above reasons, we find that the Subparagraph 11.3.6 waiver was inapplicable after completion of the project and final payment on the contract. Therefore, defendants were not entitled to summary judgment as a matter of law.

The judgment is reversed and the case remanded.

GRIMM, P.J., and CARL R. GAERTNER, J., concur.