A02A0157. COLONIAL PROPERTIES REALTY LIMITED PARTNERSHIP v. LOWDER CONSTRUCTION COMPANY, INC.
(567 SE2d 389)

MIKELL, Judge.

Plaintiff Colonial Properties Realty Limited Partnership ("Colonial") appeals the grant of summary judgment to defendant Lowder Construction Company, Inc. ("Lowder") in this subrogation action. For the reasons that follow, we affirm in part and reverse in part.

The record shows that in May 1996, Colonial hired Lowder to serve as the construction manager/contractor for an apartment complex in Macon. In June 1998, a year after the complex was completed, one of the buildings was extensively damaged by a fire inadvertently started by a resident. Colonial's insurer, Lexington Insurance Company, paid the loss, in return for which Colonial executed a loan receipt. Lexington then brought the instant subrogation action in Colonial's name against Lowder, asserting four counts: negligent supervision, negligence per se, gross negligence, and breach of contract.

Lowder moved for summary judgment, arguing that the terms of the contract[1] executed by Lowder and Colonial expressly mandated waiver of subrogation rights for damages occurring after final pay-

---

[1] The contract was written on a standard form provided by the American Institute of Architects.

ment to Lowder, regardless of whether Lowder retained an insurable interest in the property. Lowder relied on Subparagraphs 11.3.5 and 11.3.7 of the contract. Subparagraph 11.3.5 provides that

> if, after final payment property insurance is to be provided on the completed Project through a policy or policies other than those insuring the Project during the construction period, the Owner shall waive all rights in accordance with the terms of Subparagraph 11.3.7 for damages caused by fire or other perils covered by this separate property insurance.

Subparagraph 11.3.7, entitled "Waivers of Subrogation," states as follows:

> The Owner and Contractor waive all rights against each other and against the Construction Manager . . . for damages caused by fire or other perils to the extent covered by property insurance obtained pursuant to this Paragraph 11.3 or other property insurance applicable to the Work. . . . A waiver of subrogation shall be effective as to a person or entity even though that person or entity would otherwise have a duty of indemnification, contractual or otherwise, did not pay the insurance premium directly or indirectly, and whether or not the person or entity had an insurable interest in the property damaged.

In opposing Lowder's motion, Colonial contended primarily that provisions waiving subrogation rights for damages arising after the completion of a project violate public policy. The trial court rejected Colonial's argument and granted summary judgment to Lowder. To this ruling Colonial assigns six enumerations of error.

1. Colonial first asserts that Lowder acted in the capacity of "construction manager" and not "contractor," as those terms were defined in the agreement. Therefore, Colonial argues, Lowder is not entitled to the benefit of the waiver of subrogation clause. This argument is based on the fact that the parties utilized the "1992 Construction Manager-Adviser Edition" of the American Institute of Architects standard form agreement, and Lowder's name is inserted in the appropriate spaces for "Construction Manager" as opposed to "Contractor."

This argument is meritless for several reasons. First, Colonial's breach of contract claim is premised upon Lowder's role as contractor. Colonial averred in this count of the complaint that "Lowder served as contractor with duties separate and apart from those as construction manager." This constituted a binding admission in judicio.

"Under OCGA § 24-3-30, admissions in judicio in a party's pleadings bind the party so that they cannot put up evidence over objection to contradict such admissions."[2] Second, Subparagraph 11.3.7 expressly applies to the construction manager as well as the contractor. Finally, Colonial does not assert that any other entity served as contractor, and if Lowder did not, who did?

Colonial's argument that no consideration existed to support a waiver of subrogation in Lowder's favor in its role as contractor is not well founded in light of Colonial's admission that Lowder served in this capacity and was paid for its work.

2. Colonial next asserts that the waiver of subrogation clause is inapplicable because the loss occurred after the work was completed. In support of this argument, Colonial relies on Subparagraph 11.3.1, which states:

> Unless otherwise provided, the Owner shall purchase and maintain . . . property insurance in the amount of the initial Contract Sum as well as subsequent modifications thereto for the entire Work. . . . Such property insurance shall be maintained until final payment has been made . . . or until no person or entity other than the Owner has an insurable interest in the property . . . , whichever is earlier.

Based on this clause, Colonial argues that it was not required to maintain insurance after completion of the project and thus had not waived subrogation at the time the loss occurred. We disagree. "It is axiomatic that contracts must be construed in their entirety and in a manner that permits all of the terms contained therein to be consistent with one another. Of course, the terms and phrases contained in a contract must be given their ordinary meaning."[3] Bearing in mind these cardinal rules of contract construction, we must endeavor to harmonize all relevant provisions of the contract at issue.

The contract defines "the Work" as "the construction and services required by the Contract Documents, *whether completed or partially completed,* and includes all other labor, materials, equipment and services provided or to be provided by the Contractor to fulfill the Contractor's obligations." (Emphasis supplied.) As previously noted, Subparagraph 11.3.5 also provides for a waiver of subrogation rights after final payment.

---

[2] (Punctuation omitted.) *Keeley v. Cardiovascular Surgical Assoc.*, 236 Ga. App. 26, 27 (1) (510 SE2d 880) (1999).

[3] *Kreimer v. Kreimer*, 274 Ga. 359, 361 (1) (552 SE2d 826) (2001). See also *Anderson v. Anderson*, 274 Ga. 224, 228 (3) (552 SE2d 801) (2001) ("A contract must be construed so as to reconcile its different provisions and to reject a construction that leads to a contradiction.").

We interpret Subparagraph 11.3.1 as requiring Colonial to purchase and maintain insurance covering the project during its construction. Subparagraph 11.3.5 permitted, but did not require, Colonial to obtain a separate policy covering the completed project after final payment was made to Lowder. If Colonial obtained such a policy, then pursuant to this clause and Subparagraph 11.3.7, Colonial waived all subrogation rights for damages attributable to fire or other perils covered by this separate insurance. It follows that Subparagraph 11.3.1 is not inconsistent with Subparagraph 11.3.7 and that the parties intended to provide for waiver of subrogation rights for losses occurring after the project was completed.

Colonial correctly points out that the extension of subrogation clauses to cover post-project losses is an issue of first impression for this Court. However, the validity of clauses waiving subrogation for damages occurring during construction is well established.[4] In *Tuxedo Plumbing &c. Co. v. Lie-Nielsen*,[5] the Supreme Court held that OCGA § 13-8-2 (b) does not prohibit subrogation clauses in construction contracts which shift the risk of loss to one party's insurance company regardless of who is at fault. In so holding, the Court noted that

it has been recognized by numerous authorities that where parties to a business transaction mutually agree that insurance will be provided as a part of the bargain, such agreement must be construed as providing mutual exculpation to the bargaining parties who must be deemed to have agreed to look solely to the insurance in the event of loss and not to liability on the part of the opposing party.[6]

As neither Georgia appeals court has addressed the precise issue before us, we look to other jurisdictions for guidance. In *Town of Silverton v. Phoenix Heat Source System*,[7] the Colorado Court of Appeals interpreted the same subrogation clauses as those at issue in the instant case. The case involved a contractor who installed a new roof on the town hall and a subcontractor who supplied an electric snow-melting system for the roof. After the roofing project was completed, the town hall was damaged by a fire allegedly caused by

[4] See *May Dept. Store v. Center Developers*, 266 Ga. 806 (1) (471 SE2d 194) (1996); *Tuxedo Plumbing &c. Co. v. Lie-Nielsen*, 245 Ga. 27, 28 (1) (262 SE2d 794) (1980); *Glazer v. Crescent Wallcoverings*, 215 Ga. App. 492, 493 (451 SE2d 509) (1994); *McAbee Constr. Co. v. Ga. Kraft Co.*, 178 Ga. App. 496, 498 (343 SE2d 513) (1986).
[5] Supra.
[6] (Citation and punctuation omitted.) Id. at 28 (1).
[7] 948 P2d 9 (Colo. App. 1997).

the snow-melting system, and the town sued the contractor and sub-contractor. Summary judgment was granted to the defendants based on the waiver of subrogation clauses in the parties' contract, and the appeals court affirmed. The court held that under Subparagraph 11.3.7, the fact that a contractor had finished its work and had no remaining insurable interest in the property did not terminate the waiver of subrogation rights.

> Because property insurance applicable to the work, other than that obtained pursuant to paragraph 11.3.1, may remain in effect after the final completion date, so too may a waiver of subrogation rights under paragraph 11.3.7 remain in effect. Thus, we conclude that the waiver of subrogation clause barred subrogation for insured losses to the work occurring after the final completion date and the date final payment was made.[8]

*Town of Silverton* is squarely on point, and we find its reasoning persuasive. Moreover, cases cited by Colonial are distinguishable. For instance, in *Automobile Ins. Co. &c. v. United H.R.B. Gen. Contractors*,[9] the contract contained a clause which specifically provided that the owner did not waive its claims against the contractor for faulty or defective work appearing after substantial completion.[10] No such clause appears in the contract between Lowder and Colonial. The contract in *Fairchild v. W. O. Taylor Commercial Refrigeration &c. Co.*[11] was a simple one-page printed form which contained, in very small print at the bottom of the page, a sentence stating, "Owner to carry fire, tornado, and other necessary insurance."[12] The court declined to infer from this language an intent to limit the contractor's liability for its negligent acts for losses occurring after construction was finished. In this case, however, the parties' intent to shift the risk of loss to insurance even after final payment and regardless of whether Lowder retained an insurable interest in the property was clearly expressed in the contract. It follows that *Fairchild* is inapposite.

3. Colonial next argues, as it did in the trial court, that Subparagraph 11.3.7, which waives subrogation rights regardless of whether Lowder has an insurable interest in the property, is unenforceable because it violates OCGA § 33-24-4 (b). That statute provides: "No

---

[8] Id. at 13.
[9] 876 SW2d 791 (Mo. App. 1994).
[10] Id. at 794.
[11] 403 S2d 1119 (Fla. App. 1981).
[12] Id. at 1120.

insurance contract on property or of any interest therein or arising therefrom shall be enforceable except for the benefit of persons having, at the time of the loss, an insurable interest in the things insured." Colonial asserts that because Lowder lacked an insurable interest in the completed project, it may not seek to enforce Colonial's policy. That is a correct statement of law, based on the facts. However, Lowder is not attempting to enforce Colonial's policy; it is Colonial which is relying on its own policy to pay the loss, and Colonial most assuredly has an insurable interest in the property at issue. Accordingly, this argument is meritless.[13]

4. In its next enumeration of error, Colonial argues that the subrogation provision is unenforceable because it provides for limitless future exculpation for the contractor's negligence, thereby violating OCGA § 13-8-2 (b). We disagree. As we noted in *Glazer v. Crescent Wallcoverings,*

> [OCGA § 13-8-2 (b)] provides that an agreement relative to the construction or maintenance of a building which purports to indemnify the promisee for damages resulting from the promisee's negligence is unenforceable as a matter of public policy. However, our Supreme Court has recognized that parties to a building-related contract . . . can agree to look solely to insurance to cover their losses without violating this statute, and that an intent to do so is the "well-recognized meaning" of a "waiver of subrogation" clause. See *Tuxedo Plumbing &c. Co. v. Lie-Nielsen.*[14] Such an agreement does not violate the statute because it does not indemnify the promisee, but instead "shifts the risk of loss to the insurance company regardless of which party is at fault. [Cit.]" Id. at 29 (2).[15]

In addition, Georgia public policy favors freedom of contract.

> It is well settled that contracts will not be avoided by the courts as against public policy, except where the case is free from doubt and where an injury to the public interest clearly appears. In examining this case we also follow the rule that

---

[13] *Ins. Co. of North America v. Fowler,* 148 Ga. App. 509, 512 (2) (251 SE2d 594) (1978) (overruled on other grounds, *Seaboard Coast Line R. v. Mobil Chem. Co.,* 172 Ga. App. 543 (323 SE2d 849) (1984)) (an owner may insure his interest in the property under construction, and a contractor may indemnify himself against loss during the same period of time, and both policies will be payable, in the event of a fire, to the extent of the loss of each insured under his separate policy).

[14] Supra.

[15] *Glazer v. Crescent Wallcoverings,* supra, 215 Ga. App. at 493 (1).

the courts must exercise extreme caution in declaring a contract void as against public policy and should do so only in cases free from doubt.[16]

Where the parties to a commercial construction project agree to shift the risk of loss to the owner's insurer even after the project is completed, an injury to the public interest does not clearly appear. The subrogation clause at issue does not violate OCGA § 13-8-2 (b) or any other public policy of this state.

5. Finally, Colonial contends that the trial court erred in granting summary judgment to Lowder on the gross negligence count of the complaint. As Colonial notes in its brief, the trial court did not specifically address this count.

First, Colonial argues that the subrogation clause cannot exculpate Lowder for acts of gross negligence. That is correct. "[Waiver of subrogation] clauses are intended to allows [sic] the parties to exculpate each other from personal liability in the event of property loss or damage to the work to the extent each party is covered by insurance."[17] "Exculpatory clauses . . . are valid and binding, and are not void as against public policy when a business relieves itself from its own negligence."[18] However, exculpatory clauses do not relieve a party from liability for acts of gross negligence[19] or wilful or wanton conduct.[20]

Colonial next asserts that genuine issues of material fact remain on its gross negligence claim. In support of its position, Colonial points to reports in the record suggesting that Lowder failed to install certain fire-blocking materials on the higher floors of the apartment building despite the fact that the materials were clearly specified on the blueprints. Experts who prepared the reports concluded that the absence of the materials caused the fire to spread immediately through the interior of the building, partially collapsing the structure.

> Gross negligence . . . is defined as the want of slight care and diligence, such care as careless and inattentive persons would usually exercise under the circumstances, want of that diligence which even careless men are accustomed to

---

[16] (Citations and punctuation omitted.) *Emory Univ. v. Porubiansky*, 248 Ga. 391, 393 (282 SE2d 903) (1981). Cf. *Bishop v. Act-O-Lane Gas Svc. Co.*, 91 Ga. App. 154, 166 (85 SE2d 169) (1954), interpreting OCGA § 1-3-7.

[17] (Citation and punctuation omitted.) *Behr v. Hook*, 787 A2d 499, 503 (Vt. 2001).

[18] *My Fair Lady of Ga. v. Harris*, 185 Ga. App. 459, 460 (364 SE2d 580) (1987).

[19] *Barbazza v. Intl. Motor Sports Assn.*, 245 Ga. App. 790, 792 (3) (538 SE2d 859) (2000).

[20] *Hawes v. Central of Ga. R. Co.*, 117 Ga. App. 771, 772 (162 SE2d 14) (1968).

exercise, carelessness manifestly materially greater than want of common prudence.[21]

On appeal from the grant of a motion for summary judgment, we conduct a de novo review of the law and the evidence, giving the opposing party the benefit of all reasonable doubt and construing the evidence and all inferences and conclusions therefrom most favorably toward the party opposing the motion.[22] Giving Colonial the benefit of all reasonable inferences that may be drawn from the reports of its experts, we conclude that a genuine issue exists as to whether Lowder was grossly negligent if, as alleged, it failed to adhere to the blueprints during construction of the apartment building.

When facts alleged as constituting gross negligence are such that there is room for difference of opinion between reasonable [people] as to whether or not negligence can be inferred, and if so whether in degree the negligence amounts to gross negligence, the right to draw the inference is within the exclusive province of the jury.[23]

It follows that summary judgment on this count was improper and must be reversed.

*Judgment affirmed in part and reversed in part. Andrews, P. J., and Phipps, J., concur.*

DECIDED JUNE 25, 2002.

*Cozen & O'Connor, Michael A. McKenzie, David A. Cornelius*, for appellant.

*Finley & Buckley, Timothy J. Buckley III, Jonathan E. White, Seacrest, Karesh, Tate & Bicknese, Karsten Bicknese, Annarita M. Busbee, Daniel Bullard IV*, for appellee.

---

[21] (Citation and punctuation omitted.) *Rider v. Taylor*, 166 Ga. App. 474 (1) (304 SE2d 557) (1983).

[22] *Collier v. State Farm &c. Ins. Co.*, 249 Ga. App. 865, 866 (1) (549 SE2d 810) (2001).

[23] (Citation omitted.) *Trustees of Trinity College v. Ferris*, 228 Ga. App. 476, 477 (1) (491 SE2d 909) (1997).