OPINION
{¶ 1} Appellant, Acuity, A Mutual Insurance Company, appeals the summary judgment entered by the Portage County Court of Common Pleas on its subrogation claim against appellee, Interstate Construction, Inc. At issue is whether the waiver of subrogation provision contained in a construction contract between appellant's insured and appellee applied to damage covered by insurance purchased after construction was completed. For the reasons that follow, we affirm. *Page 2 
 {¶ 2} In 1998, appellant's nonparty insured BVM Hospitality, Inc. ("BVM") entered a contract with appellee for the construction of a Best Western Inn on its property located in Streetsboro, Ohio. Appellee served as general contractor on the project, which was completed and for which final payment was made in that year.
 {¶ 3} In 2001 and again in 2003, appellant issued two policies of insurance in favor of BVM covering property damage at the inn. On or about March 12, 2002, water pipes at the inn froze and burst resulting in property damage. Appellant paid BVM $57,890.31 as a result of that damage. Two years later, on or about January 8, 2004, water pipes again froze and burst at the Best Western, resulting in further damage. As a result of this loss, appellant paid $201,138.20.
 {¶ 4} On January 6, 2006, appellant filed this action as subrogee of its insured to recover a total of $259,028.51. In its complaint, appellant alleged that appellee as general contractor breached its contract with BVM by failing to follow the contract specifications in constructing the attic and ceiling spaces of the inn. Appellee filed an answer denying the material allegations of the complaint.
 {¶ 5} On January 18, 2007, appellee filed a motion for summary judgment, arguing that appellant's claim was barred by a waiver of subrogation provision contained in the American Institute of Architects ("AIA") General Conditions that were incorporated into the contract. In its motion appellee asked the trial court to limit its consideration to the issue of whether appellant's claim is barred by this provision. In its brief in opposition, appellant argued the waiver provision in the contract did not apply to the subject property losses as they occurred after completion of the contract and final payment by BVM to appellee for same. The trial court entered summary judgment in favor of appellee, finding: *Page 3 
 {¶ 6} "[Subparagraph] 11.4.7 [of the General Conditions] * * * unambiguously provides that Acuity's insured and Interstate waive all rights against each other for any damage, whatever the cause, to the extent the damage is covered by the property insurance required to be covered pursuant to 11.4.1, or other property insurance applicable to `the Work.' The Work is any and all construction and services, whether the construction and services are partial or complete, performed by Interstate on the entire Project, whether the Project is partial or complete."
 {¶ 7} Appellant appeals the trial court's summary judgment, asserting as its sole assignment of error:
 {¶ 8} "THE TRIAL COURT ERRED TO THE PREJUDICE OF PLAINTIFF-APPELLANT ACUITY BY GRANTING SUMMARY JUDGMENT IN FAVOR OF DEFENDANT-APPELLEE INTERSTATE CONSTRUCTION, INC. AS DEFENDANT-APPELLEE INTERSTATE CONSTRUCTION, INC. WAS NOT ENTITLED TO JUDGMENT AS A MATTER OF LAW."
 {¶ 9} Pursuant to Civ.R. 56(C), summary judgment is proper when (1) the evidence shows "there is no genuine issue as to any material fact" to be litigated; (2) "the moving party is entitled to judgment as a matter of law;" and (3) "it appears from the evidence * * * that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence * * * construed most strongly in the party's favor."
 {¶ 10} A trial court's decision granting summary judgment, like other questions of law, is reviewed by an appellate court under a de novo standard of review. Village of Grafton v. Ohio Edison Co.,77 Ohio St.3d 102, 105, 1996-Ohio-336. A de novo review *Page 4 
requires the appellate court to conduct an independent review without deference to the trial court's decision. Mack v. Ravenna Men's CivicClub, 11th Dist. No. 2006-P-0044, 2007-Ohio-2431, at ¶ 12.
 {¶ 11} Unlike factual questions which must be construed in favor of the non-moving party, the interpretation of a contract is a question of law that we review de novo. Allstate Indemn. Co. v. Collister, 11th Dist. No. 2006-T-0112, 2007-Ohio-5201, at ¶ 15, citing Nationwide Mut.Fire Ins. Co. v. Guman Bros. Farm, 73 Ohio St.3d 107, 108,1995-Ohio-214. Our primary goal is to ascertain and give effect to the intent of the parties. Hamilton Ins. Servs., Inc. v. Nationwide Ins.Cos., 86 Ohio St.3d 270, 273, 1999-Ohio-162. We presume the intent of the parties to a contract resides in the language used in the written instrument. Kelly v. Med. Life Ins. Co. (1987), 31 Ohio St.3d 130, paragraph one of the syllabus. A contract is to be read as a whole and the intent of each part gathered from a consideration of the whole.Saunters v. Mortenson, 101 Ohio St.3d 86, 89, 2004-Ohio-24.
 {¶ 12} It is well-settled that contractual subrogation clauses are controlled by the usual rules of contract interpretation. Blue Cross Blue Shield Mut. of Ohio v. Hrenko, 72 Ohio St.3d 120, 122,1995-Ohio-306. In construing a contract, we give its terms their plain and ordinary meaning. City of Sharonville v. Am. Employers Ins.Co., 109 Ohio St.3d 186, 187, 2006-Ohio-2180. When interpreting a contract, the court must first examine the plain language of the contract for evidence of the parties' intent. Gottlieb Sons, Inc. v.Hanover Ins. Co. (Apr. 21, 1994), 8th Dist. No. 64559, 1994 Ohio App. LEXIS 1682, *13.
 {¶ 13} It is well-settled that waiver of liability clauses are valid expressions of the parties' freedom to contract. Hanover Ins. Co. v.Cunningham Drug Stores (May 6, *Page 5 
1982), 8th Dist. No. 44066, 1982 Ohio App. LEXIS 13528, *7. Ohio courts have held that "such a clause * * * which mutually prohibits the owner [and] contractor * * * from enforcing their rights against each other for damages caused by fire or other perils covered by insurance* * * is not void as being against public policy." Insurance Co. of NorthAmerica v. Wells (1973), 35 Ohio App.2d 173, 177. Ohio courts have repeatedly held that waiver-of-subrogation provisions are valid and enforceable. Nationwide Mutual Fire Ins. Co. v. Sonitrol, Inc. ofCleveland (1996), 109 Ohio App.3d 474, 482; Len Immke Buick, Inc. v.Architectural Alliance (1992), 81 Ohio App.3d 459, 464.
 {¶ 14} In Insurance Co. of North America, supra, the owner and contractor agreed the owner would obtain property insurance on the project under construction, and the owner and contractor waived all rights against each other for damages caused by fire or other perils covered by insurance provided under the contract. The insurer paid the amount of the loss, then pursued subrogation against the contractor. The contractor filed a motion for summary judgment based on the waiver of subrogation clause. The trial court granted the motion. The Tenth Appellate District affirmed, holding the waiver relieved the contractor from any liability to the insurer. The court held: "The insurer is subrogated to * * * only the rights of its insured * * *. It would have no right to recover from the defendant for defendant's negligence in causing a fire if its insured did not have the right of recovery therefor." Id. at 177.
 {¶ 15} The contract at issue here consists of two standard documents used in the construction industry — the AIA "Standard Form of Agreement Between Owner and Contractor" and the "General Conditions of the Contract for Construction." The 1997 version of both documents is at issue here. The General Conditions consists of fourteen articles concerning the duties of the Owner and the Contractor, as well as the *Page 6 
allocation of risks between the two. Of particular relevance to this appeal is Paragraph 11.4, entitled "Property Insurance." The pertinent Subparagraphs of this Paragraph provide as follows:
 {¶ 16} "11.4.1 Unless otherwise provided, the Owner shall purchase and maintain * * * [an all-risk] property insurance * * * policy * * * in the amount of the * * * Contract Sum * * *. Such property insurance shall be maintained, unless otherwise provided in the Contract Documents or otherwise agreed in writing by all parties and entities who are beneficiaries of such insurance, until final payment has been made * * * or until no person or entity other than the Owner has an insurable interest in the property required by this Paragraph 11.4 to be covered, whichever is later. * * *"
 {¶ 17} "* * *
 {¶ 18} "11.4.5 If * * * after final payment property insurance is to beprovided on the completed Project through a policy * * * other than those insuring the Project during the construction period, the Owner shall waive all rights in accordance with the terms of Subparagraph 11.4.7 for damages caused by fire or other causes of loss covered by this separate property insurance. * * *"
 {¶ 19} "* * *
 {¶ 20} "11.4.7 Waivers of Subrogation. The Owner and Contractor waive all rights against * * * each other * * * for damages caused by fire or other causes of loss to the extent covered by property insuranceobtained pursuant to this Paragraph 11.4 or other property insuranceapplicable to the Work * * *. * * * A waiver of subrogation shall be effective as to a person or entity even though that person or entity would otherwise have a duty of indemnification, * * * and whether or not the person or entity had an insurable interest in the property damaged." (Emphasis added.) *Page 7 
 {¶ 21} "Work" is defined, at Subparagraph 1.1.3, as "the construction and services required by the Contract Documents, whether completed orpartially completed, and includes all other labor, materials, equipment and services provided or to be provided by the Contractor to fulfill the contractor's obligations." (Emphasis added.)
 {¶ 22} In general, under Subparagraphs 11.4.5 and 11.4.7, subrogation rights are waived for damages resulting from fire or other perils in three situations: (1) under Subparagraph 11.4.5 if after finalpayment insurance is "to be" provided through a policy other than those insuring the project during the construction period; (2) property insurance required by Subparagraph 11.4.1 to be provided by the ownerduring the construction period; or (3) other property insuranceapplicable to the Work under Subparagraph 11.4.7.
 {¶ 23} Appellee argues that, although appellant's obligation under the contract to maintain insurance terminated on final payment, because appellant chose to obtain a policy after final payment and the damage was covered by that policy, the owner waived its rights against it for damages caused post-construction by the freezing of the pipes.
 {¶ 24} In contrast, appellant argues that the scope of the waiver of subrogation is limited to the period of time during which, under Subparagraph 11.4.1, the owner is required to provide insurance, i.e., during the period of construction. Thus, appellant argues the waiver of claims under 11.4.7 with respect to "other property insurance applicable to the Work" applies only to the construction period. Appellant also argues the waiver of subrogation under 11.4.5, where, after final payment insurance is to be provided through a policy other than that insuring the project during construction, applies only if the contract requires the owner to maintain insurance post-construction. *Page 8 
In essence, appellant argues that because the contract only requires the owner to maintain property insurance during the period of construction, the waiver of subrogation could only be in force during that period.
 {¶ 25} Appellant concedes that the waiver of subrogation provisions in the subject contract are effective to bar any subrogation claim for losses that occurred during the construction of the project and prior to final payment. However, it argues that the waiver provisions do not extend to post-completion losses, such as the property damage incurred by BVM, because the contract does not require the owner to purchase property insurance after final payment. It thus argues that BMV did not waive its insurers' rights of subrogation for losses occurring after construction by purchasing insurance after completion of the project.
 {¶ 26} The real dispute between the parties is, therefore, not whether subrogation waiver clauses are valid. Both parties agree that they are. The question is whether, under the circumstances of this case, the provisions purporting to waive an insurer's right to pursue a subrogation claim under insurance purchased after construction are clear and unambiguous, thus entitling appellee to summary judgment.
 {¶ 27} Subparagraph 11.4.5 provides that "if after final paymentinsurance is to be provided on the completed Project through a policy orpolicies other than those insuring the Project during the constructionperiod, the Owner shall waive all rights in accordance with the terms of Subparagraph 11.4.7." (Emphasis added.) Since appellant's policy did not insure the Project during the construction period, the issue is whether its policy is "insurance * * * to be provided on the completed Project through a policy * * * other than those insuring the Project during the construction period." Thus, the meaning of the phrase "to be provided" is critical in determining whether BVM's *Page 9 
purchase of insurance after final payment had been made results in waiver of appellant's subrogation rights.
 {¶ 28} We observe that the phrase "to be provided" is not defined in the General Conditions. To support its argument that waiver cannot extend beyond the time the owner is contractually obligated to provide insurance, appellant argues the insurance referenced in 11.4.5 only applies to insurance the owner was required by the contract to provide based on the use of the phrase "if after final payment property insurance is to be provided." In support of this argument, appellant relies on Subparagraph 11.4.1, which provides:
 {¶ 29} "Unless otherwise provided, the Owner shall purchase and maintain * * * [an all-risk] property insurance * * * policy * * * in the amount of the * * * Contract Sum * * *. Such property insurance shall be maintained, unless otherwise provided in the Contract Documents or otherwise agreed in writing by all persons or entities who are beneficiaries of such insurance, until final payment has been made * * * or until no person or entity other than the Owner has an insurable interest in the property required by this Paragraph 11.4 to be covered, whichever is later."
 {¶ 30} Appellant argues the insurance it provided is not "after final payment property insurance to be provided on the completed project" because Subparagraph 11.4.1 states the owner is only required to maintain property insurance after final payment if otherwise provided in the contract or a person or entity other than the owner has an insurable interest in the property. Appellant thus argues that "after final payment property insurance to be provided" refers to insurance that is required to be provided under the construction contract. However, appellant's argument does not address the distinction in the General Conditions between (1) property insurance the owner is *Page 10 
required by the contract to provide during the period of construction, at Subparagraph 11.4.1, on the one hand and on the other hand (2) property insurance to be provided on the completed project through a policy other than those insuring the project during the construction period, at Subparagraph 11.4.5, and (3) property insurance other thanthat provided pursuant to Subparagraph 11.4.1 that is applicable to theWork, at Subparagraph 11.4.7.
 {¶ 31} Appellee argues in opposition that insurance "to be provided" includes insurance the owner chooses to provide on the property after final payment, although he has no duty to obtain it under the contract. Applying that interpretation, Subparagraph 11.4.5 would mean that if after final payment the owner purchases insurance on the completed project through a policy other than that insuring the project during the construction period, the owner waives all rights against the contractor for damages due to any cause covered by insurance obtained by the owner otherwise than as required by Subparagraph 11.4.1.
 {¶ 32} Further, appellant points to Subparagraph 9.10.4 of the General Conditions, which provides:
 {¶ 33} "The making of final payment shall constitute a waiver of Claims by the Owner except those arising from: * * * 2. failure of the Work to comply with the requirements of the Contract Documents * * *." Under this provision of the contract, the making of final payment does not preclude the owner from pursuing claims against the contractor for failure of the work to comply with the specifications. Appellant argues this reservation of the right to sue militates against the interpretation that insurance purchased after final payment results in the waiver of subrogation for loss incurred while such insurance is in place. *Page 11 
 {¶ 34} Appellant further argues that because the scope of the subrogation waivers cannot exceed the insurance required by the contract at Subparagraph 11.4.1, the waiver in 11.4.7 resulting from damages covered by "other property insurance applicable to the Work" applies only to damages covered by an existing property insurance in place at the time of construction. Appellant argues that to give meaning to both Subparagraph 9.10.4, reserving the right of the owner upon final payment to bring a claim arising from failure of the work to comply with the requirements of the contract documents and the "other property insurance" waiver language in 11.4.7, "work" must be interpreted to mean "the completed structure but only through final payment." However, as noted supra, "work" is defined as "the construction and services required by the Contract Documents, whether completed or partiallycompleted * * *." (Emphasis added.) The definition does not contain a time restriction concerning when the waiver applies to completed construction.
 {¶ 35} Based on the foregoing, appellant argues that BVM's purchase of insurance after appellee completed the project should not constitute a waiver by BVM of appellant's right to pursue a subrogation claim against appellee.
 {¶ 36} We are thus asked to determine whether Subparagraph 11.4.5, concerning insurance obtained after final payment, extends Subparagraph 11.4.7, the waiver of subrogation provisions, to claims arising under a post-construction insurance policy. The parties have not cited any Ohio cases considering the issue before us, and the issue is one of first impression in this court. The parties direct our attention to decisions of several of our sister states interpreting substantially the same AIA provisions at issue here. *Page 12 
 {¶ 37} First, appellant cites Lumbermens Mutual Casualty Co. v.Grinnel Corp. (D. Ma. 2007), 477 F.Supp.2d 327. In that case the owner hired the contractor to install a fire sprinkler system in its processing plant. The contract included Subparagraph 11.4.7 of the AIA conditions providing the owner and contractor waive all rights against each other for damages caused by fire or other causes of loss to the extent covered by property insurance obtained pursuant to Paragraph 11.4 or other property insurance applicable to the work. After the work was completed, a fire occurred resulting in property damage. The insurer paid the loss, then filed a subrogation claim against the contractor. The contractor filed a motion for summary judgment.
 {¶ 38} The district court noted the issue before it was whether the language of Subparagraph 11.4.5 extends the waiver of subrogation provision, at Subparagraph 11.4.7, to claims arising under a post-construction insurance policy that was not in place at the time the parties entered into their construction contract.
 {¶ 39} The district court relied on the dissent in The MidwesternIndem. Co. v. Systems Builders, Inc. (Ind.App. 2004), 801 N.E.2d 661, who interpreted the words "to be provided" in Subparagraph 11.3.5, later renumbered to 11.4.5, as an express intent of future obligation. Following the dissent in Midwestern, the district court held that only if the parties agreed as part of their construction contract that post-construction coverage would be provided would the waiver of subrogation provision apply to the post-construction policy. The court stated that in its view a waiver of subrogation clause only made sense when property insurance is intended to cover a loss sustained during the period of construction because if subrogation rights were not waived, a protracted dispute would be likely. *Page 13 
 {¶ 40} Next, appellant cites Automobile Ins. Co. v. United H.R.B.General Contractors, Inc. (Mo.App. 1994), 876 S.W.2d 791, in support of its position that the waiver of subrogation provision in the contract is no longer effective once the project is completed. In that case a church entered a contract with a contractor for the construction of a building. Six months after final payment was made, a fire damaged the building. The church had purchased property insurance which compensated the church for the loss. The insurer then sued the contractor in subrogation. The trial court entered summary judgment for the contractor and the insurer appealed.
 {¶ 41} The contractor cited Subparagraph 11.3.6, later renumbered to 11.4.7, which provided, "The Owner and Contractor waive all rights against * * * each other * * * for damages caused by fire or other perils to the extent covered by insurance obtained pursuant to this Paragraph 11.3 or any other property insurance applicable to the Work.
 {¶ 42} The court held that when read in isolation, Subparagraph 11.3.6 seemed to constitute an unambiguous waiver of rights between the parties, but that it was inconsistent with Subparagraph 9.4.2, later renumbered to 9.10.4, which provided: "The making of final payment shall constitute a waiver of all claims by the Owner except those arising from faulty or defective Work * * *." The court held this apparent contradiction was sufficient to constitute an ambiguity so that the contractor was not entitled to summary judgment.
 {¶ 43} Appellee argues that appellate courts in other states have rejected the district court's reasoning in Grinnel, supra, i.e., TX.C.C., Inc. v. Wilson/Barnes General Contractors, Inc. (Tex.App. 2007),233 S.W.3d 562; American Guarantee and Liability *Page 14 Insurance Co. v. ADP Marshall, Inc. (Ca.App. 2007), 2007 Cal. App. Unpub. LEXIS 9794. In TX. C.C. the Texas appellate court held:
 {¶ 44} "* * * In arguing subrogation waivers cannot exceed the insurance requirement itself and thus the waiver in paragraph 11.3.5 [later renumbered to 11.4.5] resulting from property insurance that is `to be' provided after final payment applies only if the owner isrequired by contract to maintain insurance post-construction, TX. C.C. relies on * * * Grinnell[, supra]. In Grinnell, the court construed the 1997 version of paragraphs 11.3.5 and 11.3.7 [later renumbered to 11.4.5 and 11.4.7, respectively]. * * * Id. at 329, 331. Faced with the same argument TX. C.C. makes here that the phrase `to be' in paragraph 11.3.5 means `required,' the court agreed. Id. at 332. Interpreting the phrase as an express intent of a future obligation and finding no requirement in the contract that property insurance be maintained post-construction, the court concluded the subrogation claim was not barred. Id. * * *
 {¶ 45} "* * *
 {¶ 46} "In concluding `to be' means `required,' the Grinnell court relied on the dissenting opinion in Midwestern[, supra]. InMidwestern, a majority of the court concluded that the language in the 1997 version of paragraph 11.3.5 barred subrogation claims under a voluntarily maintained post-construction insurance policy that was not in place or specifically contemplated at the time the parties entered into their general construction contract. Midwestern, 801 N.E.2d at 664,669. Disagreeing with the majority, the dissent found the phrase `to be' in paragraph 11.3.5 was `key' to determining the scope of the waiver. Id. at 667 (Baker, J., dissenting). To be,' the dissent noted, is a qualifier used `to express intention, obligation or future action.' Id. (Baker, J., dissenting) (citing AM. HERITAGE DICTIONARY 155 (4th ed. 2000)). As *Page 15 
such, the dissent concluded, paragraph 11.3.5 "simply means thatif the construction contract creates an obligation in the owner to purchase insurance after construction is completed, then a waiver of subrogation results." Id. (Baker, J., dissenting).
 {¶ 47} "Such a construction of the phrase `to be,' however, cannot be obtained under our rules of contract construction. Although the dissent in Midwestern identified three `uses' of the phrase `to be,' only one was given in interpreting the scope of paragraph 11.3.5. Under our rules, we cannot choose what meaning to give words, but must give them their plain meaning. Giving `to be' its plain meaning, we conclude waiver results if after final payment the owner intends to provide property insurance, the contract requires the owner to provide property insurance, or the owner provides property insurance in the future. AM. HERITAGE DICTIONARY 155 (4th ed. 2000). * * * Given the meaning of `to be,' we conclude the parties intended subrogation claims to be waived if TX. C.C. provided insurance post-construction through a policy other than that insuring the project during construction. SeeMidwestern, 801 N.E.2d at 669 (concluding subrogation claim arising from proceeds paid under policy obtained post-construction waived under 1987 version of paragraph 11.3.5) * * *." Id. at 572-573. (Emphasis sic.)
 {¶ 48} The court in TX. C.C. also considered whether the waiver of subrogation under Subparagraph 11.3.7, later renumbered to 11.4.7, for "other property insurance applicable to the Work" extends beyond the construction period. In that case the plaintiff, like appellant here, argued that because Subparagraph 11.3.1, later renumbered to 11.4.1, imposes an obligation on the owner to maintain insurance only until final payment has been made, the "other property insurance" language necessarily *Page 16 
is limited in scope to the insurance requirement during the construction period. In rejecting this argument, the court held:
 {¶ 49} "[T]he contract defines `Work' * * * as the `construction services required by the contract documents, whether completed orpartially completed.' * * * Under the plain meaning of these words, `Work' encompasses the completed services, in this case, the restaurant. No temporal limitation exists within the definition." Id. at 570. (Emphasis sic.) The court held: "as long as property insurance covered the damages to the structure, whether completed or not, the waiver applies." Id. at 571.
 {¶ 50} Finally, the court in TX. C.C., supra, considered the provision which reserved the right to the owner, upon final payment, to bring a claim arising from failure of the work to comply with the requirements of the contract documents. The court held that this provision and Subparagraph 11.3.7 can both be given full effect by reading them together and giving them their plain meaning: final payment does not result in waiver of any claims resulting from non-complying work, unless the damage is covered by a peril covered by property insurance obtained pursuant to paragraph 11.4 or other property insurance that covers the work. Id. at 570-571. As long as property insurance covers the damages to the structure, whether completed or not, the waiver applies. Id.
 {¶ 51} In Town of Silverton v. Phoenix Heat Source System, Inc.
(Colo.App. 1997), 948 P.2d 9, the Colorado Court of Appeals interpreted substantially the same subrogation clauses as those at issue here. The town contracted with a contractor to install a new roof on the town hall. After the project was completed, the hall was damaged by a fire caused by a snow-melting system installed on the roof. The town sued the contractor. Summary judgment was granted to the contractor based on the subrogation waiver provision and the appellate court affirmed. *Page 17 
 {¶ 52} The town argued that the waiver provisions were inapplicable because the waiver was limited to damages incurred during the period of construction, and the fire damage occurred after the project was completed. The court held that the waiver extended to perils covered by property insurance obtained pursuant to the agreement and also to `other property insurance applicable to the Work * * *.'" Id. at 12, quoting waiver provision.
 {¶ 53} The court held the first type of insurance to which waiver applies is insurance an owner is required to obtain pursuant to the contract under Subparagraph 11.3.1, later renumbered to 11.4.1. The court held this insurance applies to the entire work at the site until final payment or until no one other than the owner has an insurable interest in the property, whichever is earlier. Id. at 13. As to the second type of insurance to which waiver applies, the court held that the phrase, "other property insurance applicable to the Work," refers to any property insurance applicable to the work other than that which was required to be procured by the owner under the contract. Id. The court also noted the waiver provisions extended to persons or entities whether or not they had an insurable interest in the property. Thus, the fact that a contractor had finished his work and no longer had an insurable interest in the property did not terminate the waiver of subrogation rights. The court in Silverton held:
 {¶ 54} "Because property insurance applicable to the work, other than that obtained pursuant to paragraph 11.3.1 [the required property insurance], may remain in effect after the final completion date, so too may a waiver of subrogation rights under paragraph 11.3.7 [the waiver provisions] remain in effect. Thus, we conclude that the waiver of subrogation clause barred subrogation for insured losses to the work *Page 18 
occurring after the final completion date and the date final payment was made." Id. at 13.
 {¶ 55} We are not persuaded by appellant's attempt to distinguishSilverton from the case sub judice in light of the fact that inSilverton the insurance in place during construction was apparently extended post-construction, while here new policies were obtained post-construction. The court in Silverton noted, "The town does not claim it obtained this insurance to comply with the agreement, nor does it dispute that this insurance was `other property insurance applicable to the Work.'" Id. The Colorado appellate court held the waiver also applied to any property insurance other than that which was required bythe contract to be obtained by the owner.
 {¶ 56} In Colonial Properties Realty Limited Partnership v. LowderConstruction Company, Inc. (2002), 256 Ga. App. 106, 567 S.E.2d 389, the Georgia court of appeals considered provisions substantially identical to those at issue here. The court held:
 {¶ 57} "We interpret Subparagraph 11.3.1 [later renumbered to 11.4.1] as requiring Colonial [the owner] to purchase and maintain insurance covering the project during its construction. Subparagraph 11.3.5 [later renumbered to 11.4.5] permitted, but did not require, Colonial to obtain a separate policy covering the completed project after final payment was made to Lowder. If Colonial obtained such a policy, then pursuant to this clause and Subparagraph 11.3.7 [later renumbered to 11.4.7], Colonial waived all subrogation rights for damages attributable to fire or other perils covered by this separate insurance. It follows that Subparagraph 11.3.1 is not inconsistent with Subparagraph 11.3.7 and that the parties intended to provide for waiver of subrogation rights for losses occurring after the project was completed." Id. at 109.
 {¶ 58} The Georgia appellate court further held: *Page 19 
 {¶ 59} "Because property insurance applicable to the work, other than that obtained pursuant to paragraph 11.3.1, may remain in effect after the final completion date, so too may a waiver of subrogation rights under paragraph 11.3.7 remain in effect. Thus, we conclude that the waiver of subrogation clause barred subrogation for insured losses to the work occurring after the final completion date and the date final payment was made." Id. at 110.
 {¶ 60} The waiver of subrogation provision at issue here evinces the parties' intent to look solely to insurance to cover their losses regardless of which party is at fault. 2 Sweet on Construction Industry Contracts (4th ed. 1999), Insurance Bonds, Sec. 22.04[M] at p. 783;Colonial Properties, supra, at 111. Although such waivers serve to ensure construction stays on schedule without falling victim to litigation, their purpose extends beyond the construction period. "By having all the contracting parties look solely to any insurance coverage maintained by the owner post-construction in the event of loss resulting from fire or other perils, subrogation waivers continue to ensure economic relations are preserved, risks are anticipated, proper insurance protection obtained, and also continue to afford the contracting parties certainty as to liability." TX. C.C., supra, at 571.
 {¶ 61} We find the reasoning of the appellate courts of Texas, Georgia, Indiana, and Colorado to be persuasive. The phrase "to be" when appended to the past participle of another verb, e.g., to be provided, to be purchased, expresses futurity, obligation, or intention. Interpreting the phrase "to be provided" as "required to be provided" is not supported by the plain and ordinary meaning of the phrase. We hold that such interpretation is unduly restrictive and not supported by the provisions of the contract. The plain and ordinary meaning of the phrase "to be provided," as used in *Page 20 
Subparagraph 11.4.5, is that if after final payment, property insurance is required by the contract, intended by the owner to be obtained or if it is voluntarily purchased by the owner through a policy other than those policies insuring the project during the construction period, the owner waives all rights in accordance with Subparagraph 11.4.7 for damages caused by fire or other cause of loss covered by this separate property insurance.
 {¶ 62} If the parties intended to limit the meaning of the phrase "to be provided" to "required to be provided," they could have easily done so. Instead, the parties chose language that was far more broad than the restrictive interpretation appellant urges us to adopt. We presume the intent of the parties to a contract resides in the language used in the written instrument. Kelly, supra. Having expressed that intent in terms that are clear and unambiguous, we will not rewrite the contract.
 {¶ 63} Further, pursuant to Subparagraph 11.4.7, the owner waives all rights against the contractor for damages caused by fire or other causes of loss to the extent covered by property insurance obtained as required by Subparagraph 11.4.1 or other property insurance applicable to the work. As noted supra, "work" is defined as the construction required by the contract, whether completed or partially completed. We observe there is no temporal limitation following the reference to "completed construction." We therefore hold that because BVM obtained property insurance on the project after it was completed, that insurance is "other property insurance applicable to the Work," and BVM waived all subrogation rights for any damages covered by this insurance.
 {¶ 64} Finally, when viewing the contract as a whole, we perceive no inconsistency between Subparagraphs 11.4.7 and 9.10.4. When looking at these *Page 21 
provisions together, they indicate that after final payment, the owner retains the right to sue the contractor for any work that does not meet contract specifications, unless the damage caused thereby is covered by property insurance.
 {¶ 65} For the reasons stated in the Opinion of this court, the assignment of error is not well taken. It is the judgment and order of this court that the judgment of the Portage County Court of Common Pleas is affirmed.
 DIANE V. GRENDELL, P.J., COLLEEN MARY OTOOLE, J., concur. *Page 1