[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 10-15517
Non-Argument Calendar
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
APR 14, 2011
JOHN LEY
CLERK

D.C. Docket No. 1:10-CV-02524-MHS
BKC No. 10-06022

In Re:          VERNA L. DIXON,

                                                        Debtor.

_____

VERNA L. DIXON,

                                                        Plaintiff-Appellant,

                          versus

FREEMAN FINANCE,

                                                        Defendnat-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

(April 14, 2011)

Before TJOFLAT, CARNES and KRAVITCH, Circuit Judges.

PER CURIAM:

As part of her bankruptcy proceedings, Verna Dixon filed an adversary complaint against Freeman Finance (Freeman) for violations of the Truth-In-Lending Act (TILA), 15 U.S.C. § 1601, *et seq*, alleging that 1) Freeman's inclusion of the Single Interest Vehicle Insurance (VSI) premium in the amount of a loan financed by Freeman was improper and 2) Freeman failed to waive all of its rights of subrogation as required by the statute. The bankruptcy court granted summary judgment in favor of Freeman and the district court affirmed. This is Dixon's appeal.

## I.

Dixon secured a loan from Freeman using her vehicle as collateral. The loan required that Dixon maintain property insurance on her vehicle and she opted to secure the insurance from Freeman. By signing the credit disclosure statement, Dixon acknowledged that Freeman had a financial interest in the sale of the insurance because it either retained a portion of the premium or received a commission if the policy was passed onto another insurance company. The cost of the VSI was $376.00; Freeman received a 50% commission on the premium

because it remitted it to an unaffiliated insurance company. Freeman itemized the VSI premium as part of the amount financed in the credit disclosure statement.

Dixon was also given an insured's copy of the terms and conditions applicable to the insurance policy. The policy provided, "Waiver of Subrogation: Except in the case of fraudulent actions of the Insured Creditor or Insured Debtor, the Company waives any right to subrogation against the Insured Creditor or Insured Debtor."

In her bankruptcy proceeding, Dixon filed a complaint against Freeman alleging violations of TILA. Freeman moved for summary judgment, which the bankruptcy court granted. Dixon appealed to the district court and it affirmed the decision of the bankruptcy court.

II.

We review the bankruptcy court's grant of summary judgment *de novo,* applying the same legal standards used by the bankruptcy court. *In re Delco Oil, Inc.*, 599 F.3d 1255, 1257 (11th Cir. 2010).

III.

TILA was enacted to protect consumers and assist them in making informed credit decisions. *Ford Motor Credit Co. v. Milhollin*, 444 U.S. 555, 559 (1980) ("[TILA] has the broad purpose of promoting the informed use of credit by

3

assuring meaningful disclosure of credit terms to consumers.") (internal quotation marks and citation omitted). TILA is implemented by "Regulation Z," 12 C.F.R. § 226, and § 226.4 governs finance charges. Section 226.4 (d) requires,

> (2) Premiums for insurance against loss of or damage to property or against liability arising out of the ownership of property, including single interest insurance if the insurer waives all right of subrogation against the consumer, may be excluded from the finance charge if the following conditions are met,
>
> (i) The insurance coverage may be obtained from a person of the consumer's choice, and this fact is disclosed,
>
> (ii)  If the coverage is obtained from or through the creditor, the premium for the initial term of insurance shall be disclosed . . . .

12 C.F.R. § 226.4(d)(2). For Freeman to have satisfied the requirements under Regulation Z, it must have 1) disclosed to Dixon that she could choose who provided her VSI insurance, 2) disclosed to Dixon the premium for the insurance, if provided by Freeman, and 3) waived all subrogation rights against Dixon.

The parties do not dispute that Freeman properly disclosed to Dixon the amount of the premium, that it had a financial interest in the insurance she purchased, and that it might retain a portion of the premium or receive a commission. But Dixon argues that Freeman violated TILA when it treated the $376 premium for the VSI as part of the amount financed, instead of as part of the

4

finance charge. In support of her argument, Dixon points to the language of 12

C.F.R. § 226.18(c)(iii), which reads,

> (c) Itemization of amount financed.
> (1) A written itemization of the amount financed, including:
> (i) The amount of any proceeds distributed directly to the consumer.
> (ii) The amount credited to the consumer's account with the creditor.
> (iii) Any amounts paid to other persons by the creditor on the consumer's behalf. The creditor shall identify these persons.[1]

As the district court correctly observed, there is nothing in §226.18(c) that

requires a commission received by a creditor to be removed from the amount

financed and added to the finance charge. Furthermore, Dixon did not pay

Freeman's commission; the record shows that Dixon's entire premium was paid to

the third party insurer. Therefore, we conclude that Freeman did not violate TILA

or Regulation Z in its handling of the commission from Dixon's VSI insurance.

Second, Dixon argues that Freeman failed to waive all its rights to

subrogation against her as required by § 226.4(d). Dixon argues that the

qualifying language used by Freeman, "except in all cases of fraudulent actions of

the Insured Creditor of Insured Debtor," fails to waive "all right of subrogation" as

required by § 226.4(d)(2). Although Dixon is correct that the language does

require a waiver of all rights, the qualifying language does not violate TILA.

---

[1] This includes amounts paid to insurance companies on behalf of the consumer.

5

As noted by both the bankruptcy and district courts, TILA is a disclosure statute that does not affect the parties' substantive rights under state or federal law. 15 U.S.C. § § 1601, 1610(d). Under the laws of Georgia, "[Waiver of subrogation] clauses are intended to [allow] the parties to exculpate each other from personal liability in the event of property loss . . . . Exculpatory clauses are valid and binding . . . [h]owever, [they] do not relieve a party from liability or for acts of gross negligence or wilful or wanton conduct." *Colonial Props. Realty Ltd. P'ship v. Lowder Contr. Co.*, 567 S.E.2d 389, 393 (Ga. Ct. App. 2002) (internal quotation marks and citations omitted); *see also* O.C.G.A. § 13-4-60 ("A contract may be rescinded at the instance of a party defrauded. . . ."). Thus, the effect of the subrogation waiver is not changed by the inclusion of the fraud exception because Freeman did not retain any additional rights that it otherwise would not have had under Georgia law.

Because we conclude that Freeman did not violate TILA, we affirm the district court's order affirming the bankruptcy court.

**AFFIRMED.**