[Cite as *Hartford Fire Ins. Co. v. DeBra-Kuempel Inc.*, 2024-Ohio-5830.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| THE HARTFORD FIRE INSURANCE COMPANY, AS SUBROGEE OF BLUE ASH FUNDING COMPANY, LLC, | : | APPEAL NO. C-240100<br>TRIAL NO.   A-2203885 |
| | : | |
| Plaintiff-Appellant, | : | |
| | | *O P I N I O N* |
| vs. | : | |
| | : | |
| DEBRA-KUEMPEL, INC., | : | |
| | | |
| Defendant-Appellee/Third-Party Plaintiff, | : | |
| | : | |
| vs. | : | |
| | : | |
| IMEG CONSULTANTS CORP., f.k.a PEDCO E&A SERVICES, INC., | : | |
| | | |
| Third-Party Defendant-Appellee. | : | |

Civil Appeal From: Hamilton County Court of Common Pleas

Judgment Appealed From Is: Affirmed in Part and Appeal Dismissed in Part

Date of Judgment Entry on Appeal: December 13, 2024

*Rendigs, Fry, Kiely & Dennis LLP, Jonathan P. Saxton, James J. Englert, Whelan Ransel, LLC,* and *C. Zachary Ransel*, for Plaintiff-Appellant,

*Reminger Co., LPA,* and *Michael J. Caligaris*, for Defendant-Appellee/Third-Party Plaintiff,

*McNeal Schick Archibald & Biro Co., LPA*, and *Brian T. Winchester*, for Third-Party Defendant-Appellee.

**BOCK, Presiding Judge.**

{¶1}    After a heating coil malfunctioned in Blue Ash Funding Company, LLC's, newly-renovated office building ("the Property"), causing extensive damage, Blue Ash made a claim with its insurer, plaintiff-appellant The Hartford Fire Insurance Company. Hartford paid Blue Ash's claim.

{¶2}    Attempting to recoup those funds, Hartford filed a subrogation claim against defendant-appellee/third-party-plaintiff DeBra-Kuempel, Inc., asserting that the company had negligently engineered, designed, and/or installed the heating coil. DeBra-Kuempel then sued third-party defendant-appellee IMEG Consultants Corp., f.k.a. PEDCO E&A Services, Inc., ("PEDCO") seeking indemnification and contribution. The trial court granted summary judgment in DeBra-Kuempel's and PEDCO's favor. Hartford appeals.

{¶3}    We hold that a contract provision in which Blue Ash and the renovation project's architect waived all rights to damages against the project's subcontractors bars Hartford's claim against DeBra-Kuempel. And we further hold that Hartford lacks standing to appeal the trial court's summary judgment in PEDCO's favor.

## I.    *Facts and Procedure*

### A.  *Facts*

{¶4}    A malfunctioning HVAC unit caused extensive water damage to the Property. Although factual disputes existed, because the trial court granted summary judgment on a legal issue—the interpretation of the contracts' subrogation-waiver provisions—many facts underlying this case are not relevant.

### i. *The parties' contracts contained waiver provisions*

{¶5} In 2018, Symphony Development Partners, LLC, Blue Ash's predecessor-in-interest, retained BHDP Architecture to renovate the Property. BHDP and Symphony signed two separate documents comprising the agreement between them (collectively "the Contract"): an AIA Document B101-2017, "Standard Form of Agreement Between Owner and Architect Agreement" ("B101") and an AIA Document A201-2017, "General Conditions of the Contract for Construction" ("A201"). Symphony assigned its rights under the Contract to Blue Ash in April 2020. The Contract contained three subrogation-waiver provisions.

{¶6} Section 8.1.2 of the B101 ("Section 8.1.2") provides:

To the extent damages are covered by property insurance, the Owner and Architect waive all rights against each other and against the contractors, consultants, agents, and employees of the other for damages, except such rights as they may have to the proceeds of such insurance as set forth in AIA Document A201-2017, General Conditions of the Contract for Construction.

{¶7} Section 11.3.1 of the A201 ("Section 11.3.1") provides:

The Owner and Contractor waive all rights against (1) each other and any of their subcontractors, sub-subcontractors, agents, and employees, each of the other; (2) the Architect and Architect's consultants; and (3) Separate Contractors, if any, and any of their subcontractors, sub-subcontractors, agents, and employees, for damages caused by fire, or other causes of loss, to the extent those losses are covered by property insurance required by the Agreement or other

3

property insurance applicable to the Project, except such rights as they have to proceeds of such insurance. However, the scope of this waiver shall be limited to damages to the Work itself, and this waiver shall not apply to property insurance purchased by the Owner after completion of the Work or final payment, whichever comes first.

{¶8}   Finally, Section 11.3.2 of the A201 ("Section 11.3.2") provides:

If during the Project construction period the Owner insures properties, real or personal or both, at or adjacent to the site by property insurance under policies separate from those insuring the Project, or if after final payment property insurance is to be provided on the completed Project through a policy or policies other than those insuring the Project during the construction period, to the extent permissible by such policies, the Owner waives all rights in accordance with the terms of Section 11.3.1 for damages caused by fire or other causes of loss covered by this separate property insurance.

### ii.   *DeBra-Kuempel and PEDCO completed work on the Project*

{¶9}   Renovations to the Property started in 2019. BDHP retained PEDCO as the mechanical, electrical, and plumbing engineering consultant for the Project. Symphony retained Danis Building Construction Company as the general contractor for the Project. Danis, in turn, subcontracted with DeBra-Kuempel to perform HVAC installation work at the Project.

### iii.   *The HVAC system failed and Hartford paid Blue Ash's claim*

{¶10}   In December 2020, shortly after construction was completed, an HVAC unit failed, resulting in substantial water damage to the Property. The property

4

manager stated that the leak caused flooding in "a new section that had just been renovated."

{¶11} After Blue Ash filed an insurance claim, Hartford paid Blue Ash, its insured, $1,905,222.21 to cover the loss. In opposing summary judgment below, Hartford asserted that the policy under which Hartford paid Blue Ash ("the Policy") was neither a "builder's risk policy" nor a policy insuring the work on the Project or the Project itself. Rather, Hartford argued, the Policy was separate from any policies insuring the Project. The Policy covered the cost to return the Property to "pre-loss condition," but covered damages for "direct physical loss" only. There were no other insurance policies in place that might have covered the loss.

{¶12} The policy permitted Blue Ash to waive its rights to collect damages against another "prior to a covered loss or damage." But it included an exception: "For their interest in building repair or construction, you may not waive your rights to recover damages from architects or engineers except as agreed to in writing by us."

### B. Procedural history

{¶13} Hartford, as subrogee of Blue Ash, sued DeBra-Kuempel, alleging a single count of negligence. DeBra-Kuempel filed a third-party complaint against PEDCO, seeking indemnification and contribution from PEDCO if DeBra-Kuempel were found liable to Hartford.

{¶14} PEDCO moved for summary judgment on DeBra-Kuempel's claims, asserting that the Contract's subrogation-waiver provisions barred the claims. DeBra-Kuempel's memorandum in opposition limitedly joined PEDCO's argument regarding the subrogation waivers. Hartford filed a memorandum in opposition to PEDCO's motion for summary judgment.

{¶15}  DeBra-Kuempel moved for summary judgment, arguing that Hartford's negligence claim was barred by the same subrogation waivers and that the claims failed on the merits. Hartford opposed the motion.

{¶16}  Hartford moved for leave to file a second amended complaint, seeking to add PEDCO as a direct defendant. PEDCO opposed the motion.

{¶17}  After a hearing on the pending summary-judgment motions, the trial court denied Hartford's motion for leave to amend and granted summary judgment in favor of DeBra-Kuempel and PEDCO. Hartford appeals the summary-judgment decisions but does not appeal the trial court's denial of its motion for leave to amend its complaint.

## II.  Law and Analysis

### 1.  First assignment of error: Summary judgment to DeBra-Kuempel

{¶18}  Hartford's first assignment of error challenges the trial court's determination that the Contract's three subrogation waivers all applied to bar its claims against DeBra-Kuempel. Hartford asserts (1) Section 8.1.2 does not apply to DeBra-Kuempel; (2) even if Section 8.1.2 could be read to include DeBra-Kuempel, it conflicts with Sections 11.3.1 and 11.3.2, and Sections 11.3.1 and 11.3.2 control; and (3) Section 11.3.2 applies specifically to the facts of this case, it includes a carve out for insurance policies prohibiting subrogation waivers, and the Policy contains a prohibition against waivers as to engineers like DeBra-Kuempel, permitting Hartford to maintain its action.

### A. Standard of review

**{¶19}** We review a trial court's summary-judgment ruling de novo. *Environmental Solutions & Innovations, Inc. v. Edge Eng. & Science, LLC*, 2023-Ohio-2605, ¶ 6 (1st Dist.). Summary judgment must be granted where (1) there are no genuine issues of material fact, (2) the movant is entitled to judgment as a matter of law, and (3) when viewing the evidence most strongly in the nonmovant's favor, reasonable minds can only come to a conclusion that is adverse to the nonmovant. Civ.R. 56(C); *see M.H. v. City of Cuyahoga Falls*, 2012-Ohio-5336, ¶ 12.

**{¶20}** The summary-judgment movant has the initial burden to inform the court of the basis of the motion and must point to evidence in the record that shows "the absence of a genuine issue of material fact on the essential element(s) of the nonmoving party's claims." *Dresher v. Burt*, 75 Ohio St.3d 280, 293 (1996). If the movant satisfies its initial burden, the burden shifts to the nonmovant "to set forth specific facts showing that there is a genuine issue for trial." *Id.*; *see* Civ.R. 56(E). If the nonmovant fails to carry this burden, summary judgment should be granted. *Environmental Solutions* at ¶ 7.

**{¶21}** A court may not weigh the evidence or choose between reasonable inferences on summary judgment as the "purpose of summary judgment 'is not to try issues of fact, but rather to determine whether triable issues of fact exist.'" *Id.*, quoting *Walker v. Hodge*, 2008-Ohio-6828, ¶ 19 (1st Dist.).

### B. Discussion

**{¶22}** The interpretation of a contract is a matter of law that an appellate court reviews de novo. *Saunders v. Mortensen*, 2004-Ohio-24, ¶ 9.

**{¶23}** In interpreting a contract, our primary goal is to determine the parties'

intent. *Hamilton Ins. Servs. v. Nationwide Ins. Cos.*, 86 Ohio St.3d 270, 273 (1999). We presume that the parties' intent is reflected in the terms of the contract. *Saunders* at ¶ 9. Contract terms are given their plain and ordinary meaning. *City of Sharonville v. Am. Emps. Ins. Co.*, 2006-Ohio-2180, ¶ 6.

{¶24} We read contracts as a whole and whenever reasonable, we give effect to each provision within a contract. *Saunders* at ¶ 16. We cannot "wholly disregard" a provision of a contract as being inconsistent with another unless no other reasonable construction is possible. *Marusa v. Erie Ins. Co.*, 2013-Ohio-1957, ¶ 8.

{¶25} Subrogation in the insurance context is "[t]he principle under which an insurer that has paid a loss under an insurance policy is entitled to all the rights and remedies belonging to the insured against a third party with respect to any loss covered by the policy." *Ohio Bur. of Workers' Comp. v. McKinley*, 2011-Ohio-4432, ¶ 25, quoting *Black's Law Dictionary* (9th Ed. 2009). The insurer's rights are no greater than its insured—the insurer "stands in the shoes" of its insured. *Id.*, quoting *Nationwide Mut. Ins. Co. v. Zimmerman*, 2004-Ohio-7115, ¶ 16 (5th Dist.). Contractual subrogation-waiver provisions are enforceable and controlled by the same rules as any other contract. *See Blue Cross & Blue Shield Mut. v. Hrenko*, 72 Ohio St.3d 120, 122 (1995); *Acuity v. Interstate Constr.*, 2008-Ohio-1022, ¶ 13 (11th Dist.).

### i. *Section 11.3.1 applies to the Policy and bars Hartford's claims*

{¶26} Before the trial court and on appeal, DeBra-Kuempel asserted that all three subrogation waivers applied to bar Hartford's claims against it. The trial court agreed. We conclude, like the majority of courts to consider similar provisions, that based on the plain meaning of the Contract, Section 11.3.1 applies to, and bars, Hartford's claims against DeBra-Kuempel.

{¶27} Hartford acknowledged that Section 11.3.1's reference to "(1) [the Owner and Contractor] and any of their subcontractors, sub-subcontractors . . . each of the other; . . . and (3) Separate Contractors, if any, and any of their subcontractors, [and] sub-subcontractors" includes DeBra-Kuempel. Section 11.3.1 waives the Owner's and Contractor's rights to recover damages against subcontractors "to the extent those losses are covered by property insurance required by the Agreement or other property insurance applicable to the Project, except such rights as they have to proceeds of such insurance." Section 11.3.1 qualifies its scope, limiting it to "damages to the Work itself, and this waiver shall not apply to property insurance purchased by the Owner after completion of the Work or final payment, whichever comes first."

{¶28} The Contract defines "Work" as "the construction and services required by the Contract Documents, whether completed or partially completed, and includes all other labor, materials, equipment, and services provided or to be provided by the Contractor to fulfill the Contractor's obligations. The Work may constitute the whole or a part of the Project." The Contract further defines the "Project" as "the total construction of which the Work performed under the Contract Documents may be the whole or a part and which may include construction by the Owner and by Separate Contractors."

### 1) Section 11.3.1's Scope

{¶29} The parties used an AIA contract common in the construction industry. Substantially similar language appears in many cases. A court split exists regarding the scope of the waiver contained in Section 11.3.1. *See Westfield Ins. Group v. Affinia Dev., LLC*, 2012-Ohio-5348, ¶ 35-41 (5th Dist.) (discussing the two approaches). But the version of Section 11.3.1 in cases discussing this court split does not appear to

9

include the qualification present in this case that "the scope of this waiver shall be limited to damages to the Work itself."

> [The minority approach] makes a distinction between Work (as that word is defined in the contract) and non-Work property and limits the scope of the waiver to damages to the Work; and the [majority approach] draws no distinction between Work and non-Work, but instead, limits the scope of the waiver to the proceeds of the insurance provided under the contract between the owner and contractor.

*Trinity Universal Ins. Co. v. Bill Cox Constr.*, 75 S.W.3d 6, 11 (Tex.App. 2001).

{¶30} Most courts to interpret provisions similar to Section 11.3.1 have held that these provisions waive claims arising from damage to both "Work" and "non-Work" property, provided those damages are covered by insurance "required by the Agreement" or "applicable to the Work."[1] *Affinia* at ¶ 35-42 (collecting cases and adopting the "majority view"). Under the majority approach, the waiver applies "so long as a policy of insurance 'applicable to the Work' pays for the damage." *Lloyd's Underwriters v. Craig & Rush, Inc.*, 26 Cal.App.4th 1194, 1198 (1994).

{¶31} Under the minority approach, courts consider whether the damages occurred to "Work" property or "non-Work" property, and bar claims only if they arise from damage to "Work" property. *See AIG Prop. Cas. Co. v. SF Constr. Servs., Inc.*, 198 N.Y.S.3d 52, 53 (App.Div. 1st Dept.) ("Th[e], plaintiff, as the subrogee, may recover for damages to only those portions of the property that were not within the areas of SFCS's work."); *see Fid. & Guar. Ins. Co. v. Craig-Wilkinson, Inc.*, 948 F.Supp.

---

[1] It appears that most past AIA contracts used the phrase "applicable to the Work" rather than "applicable to the Project." The Contract in this case used "Project." Because "Project" subsumes "Work," this difference would at most broaden the waiver in Section 11.3.1.

10

608, 614 (S.D.Miss. 1995) ("By its terms, the waiver clause does not apply to the claim arising from damage to non-Work property."); *S.S.D.W. Co. v. Brisk Waterproofing Co.*, 76 N.Y.2d 228, 231 (1990) (same).

**{¶32}** By agreeing to Section 11.3.1's language limiting "the scope of this waiver . . . to damages to the Work itself," Symphony (as predecessor-in-interest to Blue Ash) contractually incorporated the minority view. So, under Section 11.3.1, Hartford, standing in the shoes of Blue Ash, waived claims against the Contractor and its subcontractors and sub-subcontractors, as well as any Separate Contractors and its subcontractors and sub-subcontractors, relating to damages to the Work itself "to the extent those losses are covered by property insurance required by the Agreement or other property insurance applicable to the Project."

### 2) Section 11.3.1 includes the Policy

**{¶33}** Hartford argues that the Policy is not included in Section 11.3.1. It asserts that Section 11.3.1's application is limited to builder's risk policies.

**{¶34}** Some courts have interpreted Section 11.3.1's reference to "property insurance required by the Agreement" to mean a builder's risk policy, *see Ace Am. Ins. Co. v. Am. Med. Plumbing, Inc.*, 458 N.J.Super. 535, 542 (2019) ("The first is property insurance an owner obtains 'pursuant to' section 11.3, which includes the builder's risk insurance [required by the agreement]"). But most courts either have rejected this interpretation or have read "insurance applicable to the [Project]" to be broader than just builder's risk policies. *See Intergovernmental Risk Mgt. ex rel. Village of Bartlett v. O'Donnell, Wicklund, Pigozzi & Peterson Architects*, 295 Ill.App.3d 784, 797 (1998) (collecting cases). We have found no instances in which a court interpreted Section 11.3.1 as being limited to insurance purchased specifically for the Project or Work.

11

{¶35} In *Intergovernmental Risk*, *id.* at 797, after fire at a construction site, an insurance company sued an architect on behalf of its subrogee-owner. The owner and architect had entered into an AIA contract with language identical to Section 8.1.2 and similar to Section 11.3.1 that omitted the scope of the waiver. *Id.* at 787-788. After the architect moved to dismiss based on the subrogation waivers, the insurer argued that Section 11.3.1's waiver did not apply because the policy under which it paid its insured's claims was not a builder's risk policy and therefore not a policy "applicable to the work." The Illinois court rejected this argument, noting that the insurance company's interpretation of the waiver would render the phrase "or other property insurance applicable to the Work" redundant. *Id.* at 797. The Illinois court noted that "courts in other jurisdictions have interpreted similar provisions in owner/contractor agreements to find that all-risk policies, obtained prior to execution of the construction contracts, were 'other property insurance applicable to the Work' subject to waiver of subrogation provisions in the agreements." *Id.*, citing *Lloyd's Underwriters*, 26 Cal.App.4th at 1196. The court rejected any further distinction between "all-risk" and "general liability" policies, reasoning that the issue was not how the policies were labeled, but "whether those policies cover the risks and losses delineated in the construction agreements between the [owner] and the architect and contractor." *Id.* at 798.

{¶36} Other courts have similarly concluded that language like that contained in Section 11.3.1 applies to policies other than builder's-risk policies. *See Haemonetics Corp. v. Brophy & Phillips Co.*, 23 Mass.App.Ct. 254, 257 (1986) (preexisting insurance policy was a policy on the "work" despite the fact that the policy was more extensive than what was required under AIA contract); *see also Chadwick v. CSI, Ltd.*,

137 N.H. 515, 524 (1993) (owner's raising limits on preexisting property-insurance policy to insure the project was property insurance "insuring the Work."); *Walker Eng., Inc. v. Bracebridge Corp.*, 102 S.W.3d 837, 840 (Tex.App. 2003) (collecting cases and concluding that language similar to 11.3.2 precluded a property owner's lawsuit against a subcontractor).

{¶37}  We similarly read the language in Section 11.3.1 to apply to the Policy because the Policy, though more extensive than a builder's-risk policy, is the Policy that Blue Ash acquired to cover the risks and losses delineated in the Contract. Hartford's claims adjuster in this case stated in his deposition that no other insurance policies were in place that may have provided primary coverage for the loss. The adjuster further confirmed that the Policy did cover Blue Ash's water-damage loss, which was evident by the fact that Hartford paid the claim. The Policy covered "direct physical loss" that resulted from the failed HVAC unit. Given the absence of any other policy in the record, we conclude that the Policy was an insurance policy "required by the agreement."

{¶38}  Interpreting Section 11.3.1 to bar Hartford's claims under the Policy also effectuates the purpose of subrogation waivers in construction contracts. Such waivers shift the risk of loss to insurance to avoid construction delays and the risk of litigation. *Accord Walker Eng., Inc.*, 102 S.W.3d at 841 ("[T]he purpose of [subrogation-waiver] provisions is to eliminate the need for lawsuits by protecting all contracting parties from property loss under the owner's property insurance."). The damages that occurred to the Property resulted from one or more of the (sub)contractors alleged negligence during the design and construction of the Project. This is the precise

scenario subrogation waivers are intended to cover. Allowing an owner or its insurance company to bypass contractual waiver provisions would defeat the parties' intent.

**{¶39}** We hold that Section 11.3.1 applies to the Policy and bars Hartford's claim against DeBra-Kuempel.

### 3) *Section 11.3.2 does not apply to the Policy*

**{¶40}** Hartford asserts that Section 11.3.2, and not Section 11.3.1, applies to the Policy. Hartford claims that, because the Policy is not a builder's risk policy, it is a policy "separate from those insuring the Project."

**{¶41}** Section 11.3.2 waives the Owner's right to collect damages for losses to property covered by "policies separate from those insuring the Project"—to the extent permissible by the policy. Several courts interpreting this provision have limited its application to damage to nonproject property. *See Westfield Ins. Group*, 2012-Ohio-5348, at ¶ 43 (5th Dist.) (Discussing Section 11.3.2's language and reasoning that "even though the damage occurred to non-Work property, the owner waived subrogation rights because the damages were insured. This provision shows that the contracting parties were not opposed to waiving damages to non-Work property."); *see also Lexington Ins. Co. v. Entrex Community Serv.*, 275 Neb. 702, 717-718 (2008) ("We understand this provision to mean that if the owner acquires a separate property insurance policy to cover non-Project property—a  policy that did not cover the Project or Work  property—and the non-Project property is damaged, the owner waives subrogation rights for the insurer as to those damages."); *Empress Casino Joliet Corp. v. W.E. O'Neil Constr. Co.*, 2016 Ill.App.(1st) 151166, ¶ 97 (2016) (same).

**{¶42}** Hartford cites *Empress Casino* to argue that Section 11.3.2, rather than Section 11.3.1, applies to the Policy and contends that the Policy's carve-out language

allows it to maintain its suit. But even if that case were on point—the court's only discussion of the provision similar to Section 11.3.2 was dicta and, unlike here, the owner had multiple policies covering the property—the Policy was not "separate from those insuring the Project." Indeed, Hartford acknowledged that no other insurance policy covered Blue Ash's claim. And Hartford paid Blue Ash's claim and did not assert that the damages were not to the Work.

{**¶43**} We overrule Hartford's first assignment of error.

### 2. *Second assignment of error: Summary judgment to PEDCO*

{**¶44**} In its second assignment of error, Hartford asserts that the trial court erred in granting PEDCO summary judgment on DeBra-Kuempel's third-party complaint against PEDCO. Hartford lacks standing to appeal this ruling.

{**¶45**} Generally, a party lacks standing to bring an appeal to protect the rights of a third party. *Axline v. Kevin R. Conners, LLC*, 2015-Ohio-4679, ¶ 43 (10th Dist.). This is because only a party aggrieved by an order may bring an appeal. *Id.*, citing *Ohio Contract Carriers Assn. v. Pub. Util. Comm.*, 140 Ohio St. 160, 161 (1942). A party is aggrieved by an order and has standing to appeal the order if a party has a "present interest in the subject matter of the litigation which has been prejudiced by the judgment of the lower court." *Willoughby Hills v. C. C. Bar's Sahara, Inc.*, 64 Ohio St.3d 24, 26 (1992).

{**¶46**} Initially, Hartford contends that, because PEDCO did not argue that Hartford lacked standing to challenge its motion for summary judgment below, PEDCO has waived this issue. It is true that PEDCO did not assert below that Hartford lacked standing to oppose its summary-judgment motion. But PEDCO now challenges Hartford's standing to *bring an appeal*. PEDCO could not have argued below that

15

Hartford lacked standing to bring this appeal. And the standing to appeal an order is distinct from a parties' standing to assert a cause of action—the failure to raise standing as a defense may be waived. *See Fannie Mae v. Walton*, 2015-Ohio-2855, ¶ 16 (8th Dist.).

{¶47} While PEDCO could have asserted that Hartford lacked standing to oppose summary judgment below, that issue is distinct from Hartford's standing to appeal the order and was therefore not waived. Moreover, an appellate court may sua sponte raise a party's standing to appeal. *See City of Cleveland v. 3006 Montclair Ave., LLC*, 2024-Ohio-1274, ¶ 17 (8th Dist.).

{¶48} We hold that Hartford lacks standing to appeal the PEDCO judgment. First, Hartford lacks an interest in the dispute between DeBra-Kuempel and PEDCO. DeBra-Kuempel's third-party complaint seeks indemnification and contribution from PEDCO if DeBra-Kuempel were found liable on Hartford's underlying claim. DeBra-Kuempel's potential recovery from PEDCO would have no immediate effect on Hartford's claims against DeBra-Kuempel. Further, Hartford has no claims against PEDCO. While Hartford sought leave to file a second amended complaint to add PEDCO as a direct defendant, the trial court denied that motion and Hartford did not appeal that ruling.

{¶49} Second, Hartford has not demonstrated that it was prejudiced by the judgment in favor of PEDCO. Ultimately, Hartford challenges this order because the trial court relied on the same subrogation waivers to enter judgment on both Hartford's and DeBra-Kuempel's claims. But had we reversed the trial court's summary judgment in DeBra-Kuempel's favor, that would not require us to reverse the judgment in PEDCO's favor. *See Pilkington N. Am., Inc. v. Toledo Edison Co.*,

16

2015-Ohio-4797, ¶ 34 ("[W]here one party appeals a judgment, a reversal as to that party generally will not justify a reversal as to nonappealing parties.").

{**¶50**} Hartford lacks standing to appeal the trial court's order granting summary judgment in PEDCO's favor and we dismiss the portion of Hartford's appeal related to the PEDCO judgment. *See Eaton Natl. Bank & Trust Co. v. LNG Resources, LLC*, 2009-Ohio-1186, ¶ 6 (10th Dist.) (appeal dismissed where appellant lacked standing); *Chase Bank United States v. Jacobs*, 2012-Ohio-64, ¶ 9 (10th Dist.) (same).

### III.  Conclusion

{**¶51**} For the foregoing reasons, we overrule Hartford's first assignment of error, dismiss the portion of its appeal related to the PEDCO judgment, and affirm the trial court's judgment.

Judgment accordingly.

**ZAYAS** and **BERGERON, JJ.,** concur.

Please note:

The court has recorded its entry on the date of the release of this opinion.